[Crim. No. 19380. Jan. 20, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
HERBERT CHARLES MILLER, Defendant and Appellant.

COUNSEL

Herbert Charles Miller, in pro. per., Boyd Lemon, under appointment by the Supreme Court, and Barry M. Folinsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Frederick R. Millar, Jr., for Plaintiff and Respondent.

OPINION

**WRIGHT, C. J.**—Herbert Charles Miller appeals from a judgment upon convictions by jury of robbery in the first degree (Pen. Code, §§ 211, 211a),[1] burglary in the first degree (§§ 459, 460) and assault with a deadly weapon (§ 245, subd. (a)). The jury found to be true allegations

[1]Unless otherwise specified, all statutory references are to sections of the Penal Code.

that defendant inflicted great bodily injury on an employee of the business establishment where the crimes took place (§§ 213, 461) and also found to be true allegations that defendant used a firearm in the commission of each of the violations (§ 12022.5). Such findings are designed to increase the punishment for various of the crimes committed.

Defendant contends on appeal that the increased punishment provided by section 213 for the robbery conviction cannot be imposed because there is no evidence or finding that he intentionally inflicted great bodily injury on the victim of the robbery. We agree, but we also conclude that the finding that defendant intentionally inflicted great bodily injury on an occupant of the burglarized premises was properly made by the jury and that the increased punishment provided by section 461 was properly imposed. Defendant also contends that he was improperly sentenced for multiple violations arising out of the same course of conduct. (§ 654.) We agree and modify the judgment in the manner hereinafter provided.[2]

Defendant and an accomplice entered the sales department of a jewelry store during business hours in November 1973. The accomplice asked to see some watches and John Keating displayed watches and otherwise waited on the accomplice. Defendant approached Charles Burk, a nonuniformed security guard, and made inquiries concerning merchandise. Burk unsuccessfully attempted to direct defendant to salespersons and after the third inquiry defendant advised Burk that "This is a goddam holdup," and attempted to draw a gun from a shoulder holster. Burk grabbed defendant's wrist and in an ensuing struggle the two men fell to the floor. According to Burk's testimony, as he attempted to rise, defendant, who had retained possession of the weapon, "pulled the trigger" and shot Burk in the chest area. Burk fell back and defendant shot him a second time, the bullet piercing Burk's right arm. Burk attempted to crawl along the floor but stopped when defendant stated: "You better lie down there, old man." Thereafter Burk heard noises like gunshots and glass being broken.

[2]Defendant also contends that he was denied effective assistance of counsel on appeal, as appointed counsel failed to raise crucial issues before the Court of Appeal. (See *People* v. *Feggans* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21].) That issue, however, is now moot. The proceedings in the Court of Appeal were nullified when we granted defendant's petition for hearing; new appellate counsel has been appointed and such counsel has rendered as effective aid in these proceedings as is possible in view of the evidence presented at trial.

Keating, as he waited on defendant's accomplice, noted that the accomplice frequently looked over in defendant's direction until the latter became involved in a disturbance and shouted something. The accomplice then exhibited a gun and ordered Keating to the floor. While on the floor he heard gunshots and the breaking of glass from the direction in which he had observed defendant.

Mrs. Betty Sherman, an employee at the jewelry store, heard a disturbance and then observed defendant who held a gun and told her to get under a display case. She watched as defendant broke into a second display case, stating "Let's get some of this and get out." Mrs. Marjorie Diaz, still another employee, gave testimony similar to the testimony of Mrs. Sherman.

Jewelry having a retail value of approximately $441,000 was taken during the robbery. Witnesses for the People established that defendant and perhaps three accomplices arrived in the vicinity of the jewelry store in a stolen vehicle, parked nearby with the motor running and, after the robbery, returned to the car and drove off. Shortly after the robbery the car was found illegally parked in an alley with some of the stolen property in it. Other items of the stolen property were found in a clothing bag buried in the yard of the house occupied by defendant's father and a brother, one of defendant's accomplices. The fingerprints of such accomplice were found on the stolen vehicle.

Defendant does not challenge, as manifestly he cannot, the sufficiency of the evidence in support of his convictions of the substantive crimes.

*Evidence and Findings of Bodily Injury to the Victim of the Robbery and to the Occupant of the Burglarized Premises*

We deal initially with defendant's contention that there is no evidence or finding that he inflicted, with intent to do so, great bodily injury upon the victim of the robbery. The information charges that defendant by means of force or fear took personal property "from the person, possession and immediate presence of Jon [*sic*] Keating, and in the course of the robbery, with the intent to inflict great bodily injury upon Charles Burk, did inflict great bodily injury upon Charles Burk." The pertinent portions of section 213 provide for increased punishment in the case of a defendant who is found to be guilty of robbery if the trier of fact also finds upon proper allegations that such person "with the intent

to inflict such injury, inflicted great bodily injury upon the victim of the robbery."[3]

Defendant makes two attacks on the conclusion that he intentionally injured the victim of the robbery. First, the alleged victim as charged in the information is John Keating, who in fact suffered no bodily injury, and the injury which was suffered by Charles Burk, not alleged as a victim of the robbery, cannot be substituted in lieu of injury to Keating. Second, even if it is assumed that section 213 encompasses an injury during the course of a robbery inflicted on a person other than the one from whom personal property is taken, the evidence is nevertheless insufficient to establish that defendant intended to inflict great bodily injury on Burk.

In attempting to refute defendant's first contention that it was not alleged that Burk was a victim of the robbery, the People contend that Burk was in fact a victim on the record presented. They argue that as a security guard on duty Burk had constructive possession of the personal property he was charged with safekeeping, and that the jewelry was taken by force from his immediate presence. "Robbery is an offense against the person; thus a store employee may be the victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property." (*People* v. *Johnson* (1974) 38 Cal.App.3d 1, 9 [112 Cal.Rptr. 834].) Robbery convictions have been upheld against contentions that janitors and night watchmen did not have a sufficient possessory interest in their employer's personal property to qualify as victims. (*People* v. *Downs* (1952) 114 Cal.App.2d 758, 765-766 [251 P.2d 369]; *People* v. *Dean* (1924) 66 Cal.App. 602, 607 [226 P. 943].) Even a visitor in a store who was forced to remove and surrender money from the store's cash box was held to be a victim of the robbery. (*People* v. *Moore* (1970) 4 Cal.App.3d 668, 670-671 [84 Cal.Rptr. 771].)

[3]The full text of section 213 is as follows: "Robbery is punishable by imprisonment in the state prison, as follows:

"1. Robbery in the first degree, for not less than five years.

"2. Robbery in the second degree, for not less than one year.

"The preceding provisions of this section notwithstanding, in any case in which defendant committed robbery, and in the course of commission of the robbery, with the intent to inflict such injury, inflicted great bodily injury on the victim of the robbery, such fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or if admitted by the defendant, defendant shall suffer confinement in the state prison from 15 years to life."

Defendant would distinguish the foregoing cases on the ground that the victims of the robberies in those cases were the only persons present at the times of the robberies and, accordingly, were the only persons who could have been vested with constructive possession and from whom the personal property could have been taken. But the distinction is not one which excludes Burk as a potential robbery victim. He had constructive possession at the time of the robbery in the same sense as did the night watchman at the time of the robbery in *Dean.* The fact that there were other persons present in the store who also had constructive possession of the personal property is not relevant as more than one person may constructively possess personal property at the same time and be a victim of the same offender. (See *People* v. *Johnson, supra,* 38 Cal.App.3d 1, 9.) Thus Burk had constructive possession of the property taken and could properly have been alleged to be a victim.[4]

Notwithstanding the fact that Burk could have been designated a victim of the robbery, he was not expressly so designated in the information. Section 213 provides in pertinent part that if a defendant "inflicted great bodily injury on the *victim* of the robbery, *such fact shall be charged in the indictment or information* and if found to be true" the defendant shall suffer the augmented penalty. (See fn. 3, *ante,* italics added.) The People would have us read into the information language which designates Burk as a victim by adding after the allegation that defendant "did inflict great bodily injury upon Charles Burk," the phrase "another victim of the robbery." The information otherwise in no way describes the role of Burk in the robbery; for all that appears as to the events constituting the robbery he may have been a complete stranger who was unintentionally and accidentally injured during the course of the commission of the crime.[5]

[4]We have previously held that section 213 should be given a meaning in light of the objective sought to be achieved by it. (*People* v. *Carroll* (1970) 1 Cal.3d 581 [83 Cal.Rptr. 176, 463 P.2d 400].) In *Carroll* the defendant robbed the victim of his empty wallet while they were in the washroom of a tavern. The victim escaped and hid behind the bar, where he was shot by the defendant when the latter came behind the bar to the cash register. Defendant then removed the money from the register and left the bar. We stated: "The clear intent of the Legislature in increasing the penalty for first degree robbery by the . . . amendment to section 213 of the Penal Code was to discourage robbers from inflicting great bodily injury on their victims and thereby provide a measure of protection for robbery victims, including such unfortunate victims . . . who possessed nothing worth stealing." (*Id.,* at p. 584.)

[5]We think it clear, contrary to the People's further contention, that the Legislature did not intend to provide for an augmented penalty in the case of injury to persons who, unfortunately, are incidentally caught up in the events constituting the crime, as the statute expressly provides for its application upon great bodily injury to a "victim" rather than to a "person." (See also *People* v. *Carroll, supra,* 1 Cal.3d 581, 584.)

Although an allegation of the existence of the circumstances which warrant the increased punishment provided by section 213 does not itself constitute the allegation of a substantive crime, nevertheless if such augmented punishment is to be imposed all the elements which are necessary to the imposition of that punishment must be alleged and found to be true. One such necessary element is great bodily injury to a victim of the robbery. It is not enough that Burk falls within that class of persons who may have been alleged to be a victim; the trier of fact must have found him to be a victim on pleadings and instructions which properly framed the issue. Here the jury found only that defendant did inflict great bodily injury "as alleged in . . . the information."[6] As the information charged only injury to Burk without alleging his status, we cannot conclude that the jury found Burk to be a victim of the robbery, and we do not elect to impute such a finding by the jury through the device of adding substantive language to the information. Accordingly, the finding of great bodily injury to Burk cannot sustain the imposition of the increased punishment for robbery.

Defendant was also found to have inflicted great bodily injury on Burk in the course of the commission of the burglary. Section 461 provides for increased punishment for a person convicted of a burglary if in the course of the burglary "with intent to inflict such injury" he "inflicted great bodily injury on any occupant of the premises burglarized," and such facts are charged in the indictment or information.[7] The information charged defendant with the commission of a burglary at the jewelry store during the course of the commission of which he "with intent to inflict great bodily injury, did inflict great bodily injury upon Charles Burk." The jury was properly instructed in terms of section 461 and the jury found that defendant inflicted the injury "as alleged" in the

[6]The instructions to the jury also failed to advise that the person on whom the injuries were inflicted must be a victim of the robbery.

[7]The full text of section 461 is as follows:

"Burglary is punishable as follows:

"1. Burglary in the first degree: by imprisonment in the state prison for not less than five years.

"2. Burglary in the second degree: by imprisonment in the county jail not exceeding one year or in the state prison for not less than one year or more than 15 years.

"The preceding provisions of this section notwithstanding, in any case in which defendant committed burglary and in the course of commission of the burglary, with the intent to inflict such injury, inflicted great bodily injury on any occupant of the premises burglarized, such fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or if admitted by the defendant, defendant shall suffer confinement in the state prison from 15 years to life."

burglary count of the information.[8] It thus appears that although defendant must be relieved of the imposition of the augmented penalty for the robbery, he cannot be relieved of the augmented penalty for the burglary. Both sections 213 and 461 require the imposition of a term of 15 years to life when findings are made in accordance with the provisions thereof.

Defendant also contends that he cannot be held for the augmented penalty for the reason that the evidence does not support a finding that he specifically intended to inflict Burk's injuries. Although defendant appears to argue this contention only with respect to the robbery count, the issue is equally presented with respect to the burglary count. Defendant's argument is that the gun was first discharged while he grappled with Burk for its possession and that those circumstances precluded a finding that he intentionally sought to injure Burk. But defendant fired the second shot while Burk was falling backwards and defendant cannot reasonably argue that such shot was unintended. He argues instead that this shot which struck and pierced Burk's right arm near the elbow did not cause great bodily injury.

Defendant's contentions are without merit. The jury might well have found that defendant intentionally fired both shots with intent to cause injury. According to Burk's testimony he was rising from the floor when defendant first "pulled the trigger," and Burk was falling away when defendant fired the second shot. Both Burk's chest wound and the damage caused by the bullet which pierced Burk's arm could reasonably have been found by the jurors to constitute great bodily injuries. That term has been defined as meaning significant or substantial bodily injury or damage as distinguished from trivial or insignificant injury or moderate harm (see *People* v. *Wells* (1971) 14 Cal.App.3d 348, 360 [92 Cal.Rptr. 191]), and the jurors were so instructed in the instant case. In view of Burk's injuries and the circumstances under which they were inflicted the finding of intentional infliction of great bodily injury was manifestly proper.

[8] Although the information fails to expressly allege as to the burglary count that defendant intentionally inflicted great bodily injury "on any occupant of the premises burglarized" it nevertheless alleges facts which support the conclusion that Burk was injured on the premises burglarized. Thus it is alleged that defendant burglarized particular premises and that "in the course of the burglary" did inflict the injury upon Burk. Defendant does not challenge the sufficiency of the allegation of great bodily injury with respect to the burglary.

Defendant further challenges the finding that he intentionally inflicted Burk's injuries on the ground that the trial court failed to instruct the jurors properly on proof by circumstantial evidence of a specific intent to injure. The court refused to instruct the jurors in terms of CALJIC No. 2.02, as proposed by defendant. Defendant's instant contention might be rejected on the ground that as proposed the instruction appears to relate to one of the substantive counts rather than to a finding relating to section 213, 461 or both of such sections.[9] As to the substantive counts, the People did not depend on circumstantial evidence and the instruction, if proposed in that connection, was properly refused. (*People* v. *Malbrough* (1961) 55 Cal.2d 249, 250-251 [10 Cal.Rptr. 632, 359 P.2d 30].) Moreover, the court expressly instructed on the proof necessary to support a finding that defendant intentionally inflicted great bodily injury. Thus the jurors were instructed that they must find beyond a reasonable doubt that defendant entertained a *specific intent* to inflict such injury and that "the intent with which an act is done is shown by the circumstances attending the act, the manner in which it is done, the means used, and the soundness of mind and discretion of the person committing the act." (See CALJIC No. 3.34.) In view of the foregoing the jury was properly instructed in the prevailing circumstances and, on the record, defendant cannot complain of adverse findings on the issue of his intent to commit great bodily injury.

*Imposition of Multiple Sentences for Crimes Arising Out of the Same Course of Conduct*

The trial court sentenced defendant to the state prison on each of three convictions, the terms to run concurrently. Upon objection by defendant's counsel that defendant could not be punished for both the robbery and the burglary convictions, the court purported to "merge" the sentences for those convictions and, as merged, ordered that the terms therefor run concurrently with the term for the assault conviction. Such

[9]The instruction, in the form proposed by defendant, is as follows:

"The specific intent with which an act is done may be manifested by the circumstances surrounding its commission. But you may not find the defendant guilty of the offense charged in Count [ ] [this case] unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to ________ but are irreconcilable with any other rational conclusion.

"Also, if the evidence as to such specific intent is susceptible of two reasonable interpretations, one of which points to the existence thereof and the other to the absence thereof, you must adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to such specific intent appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

form of judgment was deemed to be in accordance with the provisions of section 654.[10]

Section 654 does not preclude multiple convictions but only multiple punishments for a single act or indivisible course of conduct. (See *People* v. *Beamon* (1973) 8 Cal.3d 625 [105 Cal.Rptr. 681, 504 P.2d 905].) "The proscription against double punishment . . . is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute . . . . The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (*People* v. *Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].) In *People* v. *Beamon, supra,* 8 Cal.3d 625, we stated that section 654 is applicable to "limit punishment for multiple convictions arising out of either an act or omission or a course of conduct deemed to be indivisible in time *in those instances wherein the accused entertained a principal objective to which other objectives, if any, were merely incidental.*" (*Id.,* at p. 639, italics added.) It appears clear under the *Beamon* test that in the instant case defendant entertained but a single criminal objective—to commit a theft of the contents of the jewelry store—and that those acts which constituted the burglary, the robbery and the assault were performed only as incidental objectives to that principal objective.

Notwithstanding the foregoing determination that defendant entertained but a single principal objective during an indivisible course of conduct, he may nevertheless be punished for multiple convictions if during the course of that conduct he committed crimes of violence against different victims. (*In re Ford* (1967) 66 Cal.2d 183 [57 Cal.Rptr. 129, 424 P.2d 681]; *In re Wright* (1967) 65 Cal.2d 650, 656 [56 Cal.Rptr. 110, 422 P.2d 998]; *People* v. *Ridley* (1965) 63 Cal.2d 671, 678 [47 Cal.Rptr. 796, 408 P.2d 124]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 21 [9 Cal.Rptr. 607, 357 P.2d 839].) As the purpose of section 654 "is to insure that defendant's punishment will be commensurate with his criminal liability," when he "commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons," his greater culpability precludes application of section 654. (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 20-21.)

[10]Section 654 provides in pertinent part: "An act . . . which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

In the instant case the victim of the robbery as alleged, proved and found to be true was John Keating who was accosted and threatened at gunpoint. The robbery of a victim at gunpoint has been held to be an act of violence such as to preclude application of section 654 in the case of multiple convictions involving multiple victims. (See *In re Ford, supra,* 66 Cal.2d 183; *In re Wright, supra,* 65 Cal.2d 650, 656.) Although a burglary does not necessarily involve an act of violence against any person, sections 459 and 461 define the instant crime as a burglary in the course of which the defendant intends to and does inflict great bodily injury on an occupant of the premises burglarized. Thus the burglary alleged, proved and found to be true is a crime of violence committed against Burk. Defendant being convicted of a second crime of violence against a second victim, section 654 does not preclude the imposition of punishment for both the robbery and the burglary convictions.[11]

Section 654 does, however, preclude the imposition of sentence as to the assault conviction. That crime was committed during the same course of conduct and against the same victim as in the case of the aggravated burglary conviction and defendant cannot be punished for both of those convictions.

When a defendant suffers multiple convictions, sentencing for some of which is precluded by operation of section 654, an acceptable procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable. Such stay is to be effective pending the successful service of sentence for the more serious conviction, at which time the stay is to become permanent. (See *People* v. *Beamon, supra,* 8 Cal.3d 625, 640; *People* v. *Niles* (1964) 227 Cal.App.2d 749, 755-756 [39 Cal.Rptr. 11].) The court in the instant case, however, sought to "merge" those sentences which together offended section 654. It can be contended that the effect of merging two sentences, or merging the lesser into the greater sentence and requiring the defendant to serve a term the equivalent of the greater of the two sentences, usually accomplishes the same end result as staying execution of a lesser sentence until the greater has been served, at which time the stay becomes permanent. Defendant, however, argues that the

[11]Our conclusion that defendant may be punished for both the robbery and the burglary convictions does not depend on our earlier determination that Burk was not alleged as a victim of the robbery. Even had defendant been convicted of a robbery involving both Keating and Burk as victims, section 654 would not be applicable to preclude punishment for both that crime and the burglary involving Burk as a victim, as each crime would involve at least one different victim.

merger practice nevertheless constitutes at least a technical violation of section 654.

Section 654 when applicable precludes punishment "under" more than one criminal provision. It has long been established that the imposition of concurrent sentences is precluded by section 654 (see *In re Wright, supra,* 65 Cal.2d 654-655; *People* v. *Quinn* (1964) 61 Cal.2d 551, 555 [39 Cal.Rptr. 393, 393 P.2d 705]) because the defendant is deemed to be subjected to the term of *both* sentences although they are served simultaneously. The term "merger" means inter alia the "absorption . . . of a minor offense into a greater." (Webster's New Internat. Dict. (2d ed. 1948).) A "merger" thus implies that the item absorbed continues to have existence as a part of the merged product. In *People* v. *Mulqueen* (1970) 9 Cal.App.3d 532 [88 Cal.Rptr. 235], the court, although dealing with sentences merged by operation of law under section 669,[12] held that such merged sentences constituted a violation of section 654. The People would distinguish *Mulqueen* on the ground that the sentences were merged by operation of law but that distinction is not relevant to the issue. The question is whether merged sentences, *however they became merged,* offend section 654. We conclude that the distinction to be drawn between sentences to be served concurrently and those merged for the purpose of service is too fine to justify recognition; in either case the defendant is subjected to punishment "under" more than one of the sentences.

Although defendant has not urged that he is being further subjected to multiple punishment, it nevertheless appears that he may be subjected to no more than one additional period of imprisonment pursuant to section 12022.5.[13] (See *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23].) Here defendant used the firearm on but one occasion although in the almost simultaneous commission of three crimes. He cannot, accordingly, be subjected to more than one term of the added penalty provided by section 12022.5, notwithstanding the jury's findings of use of a firearm as to all three of the convictions.

[12]Section 669 provides in pertinent part that when a person is convicted of two or more crimes and one of the prescribed punishments is life imprisonment, "then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term . . . ."

[13]Section 12022.5 provides in relevant part: "Any person who uses a firearm in the commission . . . of a robbery, assault with a deadly weapon . ... [or] burglary . . . , upon conviction of such crime, shall, in addition to the punishment prescribed for the crime . . . , be punished by imprisonment in the state prison for a period of not less than five years. . . ."

In accordance with the foregoing determinations the judgment entered herein on December 5, 1974, is modified (see *People* v. *Beamon, supra,* 8 Cal.3d 625, 640; *People* v. *Niles, supra,* 227 Cal.App.2d 749, 755, 756) as follows: first, by striking therefrom the finding as to count one that defendant in the course of the robbery, with intent to inflict great bodily injury, did inflict great bodily injury upon Charles Burk; second, by striking therefrom the following, "On motion of defendant, Count Two is ordered merged with Count One," and "Count Three to run concurrently with Counts One and Two as merged," and adding thereto immediately after the language "It is Therefore Ordered, Adjudged and Decreed that the said defendant be punished by imprisonment in the State Prison for the terms prescribed by law," the following: provided, however, that the terms for the robbery conviction (count one) and the burglary conviction (count two) shall run concurrently, and that the execution of sentence for the assault conviction (count three) be stayed pending the finality of this judgment and service of sentence as to count two, such stay to become permanent when service of sentence is completed; provided further that defendant serve only one additional period of imprisonment pursuant to the findings that as to all counts he used a firearm within the meaning of Penal Code section 12022.5.

As so modified the judgment is affirmed.

Tobriner, J., Mosk, J., and Sullivan, J.,* concurred.

**RICHARDSON, J.**—I concur under the compulsion of *In re Culbreth,* 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23].

**CLARK, J.**—For the reasons expressed in the concurring and dissenting opinion in *In re Culbreth* (1976) 17 Cal.3d 330, 335-336 [130 Cal.Rptr. 719, 551 P.2d 23], I dissent from modifying the judgment to provide that defendant serve only one additional period of imprisonment pursuant to the findings that as to all counts he used a firearm within the meaning of Penal Code section 12022.5. In other respects, I concur in the judgment and opinion of the court.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.