[No. B086452. Second Dist., Div. Seven. Feb. 20, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
MARSHALL E. JONES, Defendant and Appellant.

COUNSEL

Esther R. Sorkin, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey, and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOODS (Fred), J.**—Marshall E. Jones appeals from the judgment entered following a jury trial resulting in his conviction of seven counts of robbery, with three findings of the use of a firearm (Pen. Code, §§ 211, 12022.5, subd. (a) [counts 1, 3, 4]) and of evading a police officer with willful disregard (Veh. Code, § 2800.2), after he pled guilty to being an ex-felon in

possession of a firearm (Pen. Code, § 12021, subd. (a)).[1] He contends: "I[.] The trial court committed reversible error by giving confusing instructions on the element of possession. II[.] The trial court denied appellant a jury trial by failing to instruct the jury on the 'asportation' element of robbery."

## FACTS

Viewed in accordance with the usual rules on appeal (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established about 5:55 a.m. on February 14, 1994, the assistant branch manager for the Contractor's Warehouse in Carson, Jose Molina (count 1), was there, in front of the cash registers, talking with the store's truck driver, Edwardo "Ed" Valdez (count 2). Assistant front end manager Brian Rhodes (count 3) was working cash register three. Employee Eric Tapia (count 4) was giving change to a female customer at cash register three. Employee Gloria Escobar (count 5) was making coffee inside the employees' break room. Paul Ary (count 7), a nonemployee, was filling the store's vending machines. Employee Christopher Gilliland (count 6) was working behind the cash register in the tool rental department.

Three men armed with handguns, including appellant, codefendant Johnny Mosley and a man with a "corn row" hairstyle, entered the store.[2] Appellant was wearing a blue and white Dallas Cowboys cap. At gunpoint, appellant had Tapia and Molina get on the ground. Molina saw Valdez also on the ground. One of the robbers kicked Valdez. Appellant demanded Rhodes get down. Rhodes complied, and appellant kicked him in the side. At gunpoint, Mosley told Gilliland to get down. Gilliland complied and saw the man with the corn row hairstyle opening the store's change drawer. Gilliland saw Valdez dragged to the break room. Mosley put a gun to Gilliland's head and took him into the break room. Ary was ordered to the ground by one of the robbers and the robber took his wallet and dragged him into the break room. Ary was kicked. Tapia was forced into the break room and a robber took his neck chain. Mosley grabbed Escobar by the hair and put a gun to her head. He dragged her to the cash registers and returned her to the break room. At that time, a female customer, Valdez, Gilliland and Ary were present in the break room. Mosley removed a chain from Escobar's neck. Mosley forced Rhodes into the break room.

---

[1]When the judgment was entered in case No. TA028890, appellant was on probation in People v. Jones (Super.Ct., L.A. County, No. NA006891). Upon his conviction in case No. TA028890, the court revoked probation in case No. NA006891. The notice of appeal has been amended to indicate this appeal is additionally from the order revoking probation in case No. NA006891. Appellant raises no contention on appeal related to the revocation of probation in case No. NA006891.

[2]Codefendant Mosley was tried with appellant but is not a party to this appeal.

At gunpoint, appellant grabbed Molina and ordered him to open the store's cash room change drawer and the cash room's door. Molina called for Rhodes, who had the cash room keys. Mosley had Rhodes unlock the . cash room. Inside, at appellant's demand, Rhodes opened the safe, and appellant had Rhodes fill up a money bag with cash. Appellant ordered Molina and Rhodes to open the other safe, but the managers could not do so since the other safe was time locked. After filling bags with money, the robbers and the two employees left the cash room. The robber with the corn rows had two pillowcases in his hands, which were filled with the contents of the change drawer.

An arriving employee saw the robbers and telephoned 911. Inside the store, Molina heard sirens approaching. The robbers quickly fled. Molina telephoned 911. Molina and Rhodes locked the store. Los Angeles Deputy Sheriff Brian Rogge and his partner, Deputy Westergaard, arrived and saw three robbers flee in a black Taurus, leaving behind a fourth robber who was carrying two bags and a handgun. The Taurus led the deputies on a high-speed chase, on and off the 91 freeway, and onto Alameda Street, where the Taurus crashed and was abandoned. The area nearby was contained and, eventually, the deputies, with the aid of a canine unit, found both appellant and Mosley hiding nearby.

Inside the Taurus, the deputies found a yellow necklace and Ary's wallet. Appellant waived his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) and said he "messed up" and admitted losing his hat in flight. Appellant was not identified in a field identification, but was later identified in photographic lineups, at the preliminary hearing and at trial. Rogge testified appellant was the Taurus's driver during the high-speed chase. Mosley's fingerprint was on the Taurus. Molina, Valdez and another man found two pillowcases of money on the street near the market and kept the pillowcases until the deputies returned. Molina found appellant's Dallas Cowboys cap by the service desk near the store door.

## DISCUSSION

I. *The Trial Court Properly Charged the Jury as to Actual or Constructive Possession of Stolen Property During Robbery and the Evidence of Robbery for Victim Valdez Is Sufficient to Support the Conviction in Count 2.*

Appellant argues the jury instructions were misleading in that they did not make clear to the jury store employees are victims of robbery only if there is evidence they are in actual or constructive possession of the items

stolen from the store owner during the robbery. In support of his contention, appellant cites *People* v. *Guerin* (1972) 22 Cal.App.3d 775, 782 [99 Cal.Rptr. 573], overruled on other grounds in *People* v. *Ramos* (1982) 30 Cal.3d 553, 589 [180 Cal.Rptr. 266, 639 P.2d 908]. Appellant also claims the evidence supporting the finding of robbery in count 2 is insufficient since there was no evidence store employee Valdez was in constructive possession of the stolen property.

The court instructed the jury with CALJIC No. 9.40, concerning the elements of robbery, with CALJIC No. 4.41, concerning the role the element of fear plays in robbery, and with CALJIC No. 1.24 (1989 rev.), concerning the definition of possession.[3]

The court also gave an instruction entitled, "People's Special #1," concerning "Proper possessors of property for purposes of robbery" which said: "A store employee may be the victim of a robbery even though he or she is not its owner and not at the moment in immediate control of the stolen property."[4]

---

[3]CALJIC No. 9.40 states: "[Defendant is accused in counts 1, 2, 3, 4, 5, 6, and 7 of] the information of having committed the crime of robbery, a violation of Section 211 of the Penal Code.] [¶] Every person who takes personal property *in the possession of another*, against the will and from the person or immediate presence of that person, accomplished by means of force or fear and with the specific intent permanently to deprive such person of such property, is guilty of the crime of robbery in violation of Penal Code section 211 [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. *A person had possession of property of some value however slight*, [¶] 2. Such property was taken from such person or from [his] [her] immediate presence, [¶] 3. Such property was taken against the will of such person, [¶] 4. The taking was accomplished either by force, violence, fear or intimidation, and [¶] 5. Such property was taken with the specific intent permanently to deprive such person of the property." (Italics added.)

CALJIC No. 1.24 (1989 rev.) states: "There are two kinds of possession: actual possession and constructive possession. [¶] Actual possession requires that a person knowingly exercise direct physical control over a thing. [¶] Constructive possession does not require actual possession but does require that a person knowingly exercise control or the right to control a thing, either directly or through another person or persons. [¶] One person may have possession alone, or two or more persons together may share actual or constructive possession."

The court also charged the jury with CALJIC No. 1.01, which states: "If any rule, direction or idea is repeated or stated in different ways in these instructions, no emphasis is intended and you must not draw any inference because of its repetition. [¶] Do not single out any particular sentence or any individual point or instruction and ignore the others. Consider the instructions as a whole and each in light of all the others. [¶] The order in which the instructions are given has no significance as to their relative importance."

[4]During final comments to the jury, the prosecutor enumerated the elements of robbery and urged every one of the seven persons in the store upon whom force and/or fear was used was a victim of robbery in the case. The prosecutor commented the possession element of the robbery might present confusion since the property had to be in the victims' possession before

Valdez was not a witness at the trial. The evidence was Valdez was a store employee, a store truck driver, who was present in the cash register area in the store during the robbery. He was ordered to the ground by the robbers and kicked and forced into the break room with the customers and other store employees. He was not a witness at the trial and there was no testimony the robbers removed any of his personal property from his possession during the robbery.

The Special Instruction No. 1 was not confusing. Robbery can be committed by taking property from the actual or constructive possession of another. CALJIC No. 9.40 made it clear one element of robbery was the taking of property from the possession of another. The jury was instructed as to the meaning of actual or constructive possession. The special instruction simply clarified store employees can be victims of robbery even if they have mere constructive possession of the stolen property, rather than actual possession of the property.

The rule was settled in *People* v. *Miller* (1977) 18 Cal.3d 873 [135 Cal.Rptr. 654, 558 P.2d 552], where the court said: " 'Robbery is an offense against the person; thus a store employee may be the victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property.' [Citation.] Robbery convictions have been upheld against a contention that janitors and night watchmen did not have a sufficient possessory interest in their employer's personal property to qualify as victims. [Citations.] Even a visitor in a store who was forced to remove and surrender money from the store's cash box was held to be a victim of the robbery. [Citation.]" (*Id.* at p. 880.) The employee in question in *Miller* was a security guard.

*People* v. *Arline* (1970) 13 Cal.App.3d 200 [91 Cal.Rptr. 520], disapproved on other grounds in *People* v. *Hall* (1986) 41 Cal.3d 826, 834 [226

they could be victims of robbery. The prosecutor explained: "You were given an instruction on the difference between actual and constructive possession . . . . [¶] Actual possession is when you have direct physical control over something. That would be, for example, my files, my purse. If I were holding my purse, my brief case, my bag. I would be having actual possession of them. . . . [¶] . . . Right now you are in constructive possession of your car even though you are sitting here. You have the right to go get that car, and you are constructively possessing it as you sit in this courtroom . . . . [¶] . . . And two or more person[s] may at the same time share possession. [¶] So you do not get caught up on well, that was Contractor's Warehouse property. It was not these individuals. They are the persons who at that time that they were in the store, and they were working, they are the ones who had possession of all of Contractor's Warehouse property, the money, the items that are for sale; all of that was being constructively possessed by the employees and all of them. . . . not just one of the employees. *Every employee in there had the right to constructively possess and exercise control over those items which are there in their immediate presence at the store, and all of the elements of robbery have been satisfied.*" (Italics added.)

Cal.Rptr. 112, 718 P.2d 99], is in accord with *Miller.* In *Arline,* the information charged the robbery of a gas station at which two employees were working. The named victim of robbery was employee Jackson. The evidence was Jackson's coemployee Gomez had the key to the cash box during the robbery. The acts specified in the information occurred in Jackson's physical presence. The items taken during the robbery were within Jackson's constructive possession, as well as within Gomez's constructive possession. The *Arline* court said: "It is established that an attendant or employee may be the victim of a robbery even though he is not in charge or in immediate control of the items stolen at the moment." (13 Cal.App.3d at p. 202, citing *People v. Downs* (1952) 114 Cal.App.2d 758 [251 P.2d 369].)

 Witkin and Epstein, 2 California Criminal Law (2d ed. 1988) Crimes Against Property, section 640, page 722, explains: "The property taken must be 'in the possession of another.' (P.C. 211.) But the term 'possession' is used in a colloquial rather than a strict legal sense. Thus, in larceny, an offense only against property, the owner of property is considered in legal possession where his employee has physical custody and control. . . . If the same reasoning were applied to robbery, the crime would not be committed where property was forcibly taken from the custody of an employee, for his would not be the legal possession. However, robbery is an offense against the person as well as the property; hence the physical custody and control of an employee or other custodian is all that is required. 'We regard it as no undue extension of the robbery statute to hold it applicable to any servant or servants left in sole occupation of the premises or particular part thereof by the employer.' "

 The facts of *People v. Bekele* (1995) 33 Cal.App.4th 1457, 1461-1462 [39 Cal.Rptr.2d 797] are not helpful to this case. But the court explained the possession required for robbery is evidence the person charged as the victim owns the property, has actual possession or acts in some representative capacity with respect to the owner of the property. The person must have express or implied authority over the item taken. (*Id.,* at p. 1460.)

We think employees such as the store truck driver here, Valdez, have sufficient representative capacity with respect to the owner of the property to be the victim of robbery.

The court in *People v. Guerin, supra,* 22 Cal.App.3d at page 782, held a market box boy, who was only demonstrated to be a mere coemployee to other employees in actual and constructive possession of the stolen money, was not a victim of robbery. *Guerin* reveals no clue as to the age of the box boy and it might have been his adolescence which persuaded the court he

had insufficient authority over the stolen property to have constructive possession. However, if *Guerin* cannot be distinguished from the instant facts, we think, after *Miller*, *Guerin* is wrong and even a market box boy has sufficient representative capacity vis-à-vis the owner so as to be in "possession" of the property stolen from the store owner. Thus, the evidence supporting count 2 is sufficient to support the conviction of the robbery of Valdez.

II. *The Trial Court Had No Sua Sponte Duty to Instruct the Jury as to "Asportation."*

██ The contention the court sua sponte should have instructed the jury as to asportation lacks merit.

Appellant made no request for an instruction illuminating the element of "taking" or "asportation."

██ "A robbery has been committed if the stolen item 'is so within [the victim's] reach, inspection, observation, or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it. . . .' ' "Asportation . . . may be fulfilled by wrongfully . . . removing property from the . . . control of the owner, . . . even though the property may be retained by the thief but a moment." ' . . ." (*People* v. *Pham* (1993) 15 Cal.App.4th 61, 67 [18 Cal.Rptr.2d 636], citations omitted.) ██ "A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language. [Citation.]" (*People* v. *Lang* (1989) 49 Cal.3d 991, 1024 [264 Cal.Rptr. 386, 782 P.2d 627]; see also *People* v. *Hardy* (1992) 2 Cal.4th 86, 153 [5 Cal.Rptr.2d 796, 825 P.2d 781].)

Since CALJIC No. 9.40 states all the elements of robbery, including the elements "the person had possession of property of value however slight" which "was taken against the will of such person," it was incumbent on appellant to request clarifying language regarding asportation, if the defense deemed asportation to be in issue in the case. The failure to do so waives the issue on appeal. (See *People* v. *Hardy*, *supra*, 2 Cal.4th at p. 153.)

In this matter, appellant did not request a more detailed explanation for the jury of the "taking" or "asportation" element of robbery. The facts of the case do not present any special issue of taking or asportation. That aspect of the robbery was well established. Accordingly, the issue is waived on appeal by reason of the failure to request the complained-of instruction. (2 Cal.4th at p. 153.)

*People* v. *Montoya* (1994) 7 Cal.4th 1027, 1041, 1046 [31 Cal.Rptr.2d 128, 874 P.2d 903] is of no assistance to appellant. *Montoya* addressed the need for sua sponte instructions on the duration of the offense for the purpose of ascertaining aider and abettor liability. *Montoya* discussed asportation only in the context of determining the duration of the offense. As such, *Montoya* is not helpful to the resolution of appellant's contention.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., concurred.

**JOHNSON, J.**—I respectfully dissent.

The evidence of truck driver Valdez's role at the store and during the robbery was not sufficiently illuminated to show Valdez properly can be treated as having the same implied authority over the cash and store property as have store clerks and security personnel. "Robbery is an offense against the person who has either actual or constructive possession over the goods. . . ." (*People* v. *Estes* (1983) 147 Cal.App.3d 23, 26 [194 Cal.Rptr. 909], citation omitted.)

The difference is explained in *People* v. *Bekele* (1995) 33 Cal.App.4th 1457 [39 Cal.Rptr.2d 797]: " 'A person must [be shown to] have an ownership interest in the property taken, *or some representative capacity with respect to the owner of the property taken*, or actual possession of the property taken, for the taking of the property to constitute robbery.' " (*Id.* at p. 1461, italics in original, quoting from *State* v. *Latham* (1983) 35 Wn.App. 862 [670 P.2d 689, 691.]

The *Bekele* court explained a passenger in a car stolen by force from both its owner and a passenger is not a victim of robbery. The reason is that the passenger has no express or implied authority over the car, and does not possess the car. However, the *Bekele* court explained in the circumstances presented in that case, a coworker to a truck owner was a victim of robbery where both the owner and the coworker saw the defendant stealing personal property from the truck and both men in concert attempted to prevent the theft. The coworker, working together with the truck owner, hit the defendant as he escaped with the property. Then the coworker went in foot pursuit of the defendant alone. During the pursuit, the defendant pulled out a gun and said, " 'Don't,' " to the pursuing coworker, causing the coworker to give up his pursuit. Later, the defendant was found in possession of the items

taken from the truck. The *Bekele* court explained, in the latter circumstance, the truck owner impliedly authorized the coworker to assist him in thwarting the theft, conferring on the coworker a representative capacity with respect to the property. The coworker was thus a robbery victim.

In *People* v. *Guerin* (1972) 22 Cal.App.3d 775, 782 [99 Cal.Rptr. 573], a box boy, demonstrated only to be a mere co-employee to the other employees in actual and constructive possession of the property, was not a robbery victim. In *People* v. *Galoia* (1994) 31 Cal.App.4th 595, 597-598 [37 Cal.Rptr.2d 117], the court held a "Good Samaritan" who was inside a convenience store and attempted to thwart a theft of convenience store property and was assaulted by the thieves in doing so was not a robbery victim.

In this case, the circumstances of Valdez's role at the store and his duties with respect to the owner's property inside the store are not described so as to draw the requisite conclusion the truck driver, just like the store clerks and security personnel of a store, had a representative capacity with respect to the property. There were no circumstances in this case showing his implied authority over the property. The evidence is inadequate to demonstrate Valdez "possessed" the money which was taken during the robbery and thus the robbery of Valdez alleged in count 2 should be reversed.

Appellant's petition for review by the Supreme Court was denied May 1, 1996.