[No. B133543. Second Dist., Div. Two. July 20, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY EUGENE JONES, Defendant and Appellant.

**COUNSEL**

Sergio Bent, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews and Brad D. Levenson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BOREN, P. J.**—The trial court found Gregory Eugene Jones guilty of two counts of second degree robbery, five counts of attempted second degree robbery, and assault with a semiautomatic firearm. He was sentenced to an aggregate prison term of 18 years four months. On appeal, Jones contests the sufficiency of the evidence as well as two aspects of his prison sentence. We agree with appellant's sentencing arguments. In all other respects, we affirm.

### FACTS

Appellant and an accomplice held up the administrative offices of a Kmart store in Inglewood on March 18, 1998. Appellant and his cohort first

confronted personnel manager Maribel Delgado and sales associate LaTosha Williams in Delgado's office. Appellant's accomplice, Benjali Davis, drew a gun wrapped in a black trash bag from his clothing and pushed the weapon against Delgado's stomach. When Williams gasped, appellant grabbed her arm and warned that they would shoot Delgado if Williams screamed.

Appellant and Davis pulled the two women out of the personnel office and into the hallway. There, they encountered job applicant Anisezette Carey, loss control manager Jesus "Ray" Romo, and pantry clerk Estela Moreno. At gunpoint, the group entered the main office. Once inside, appellant walked over to lead office manager Maribel Arellano, yanked a telephone from her hand and pulled its cord from the wall. Inventory clerk Kimberly Gregory was working at a desk in the main office. Appellant pulled her from her chair and put her on the floor.

Appellant threw Delgado hard against a wall and demanded that she unlock the cash room. Delgado repeatedly informed appellant that she had no keys to the cash room because she is merely a personnel manager. Similarly, Maribel Arellano did not have the cash room keys because another employee, Yvonne Cardeenas, had taken them. Appellant ransacked the office looking for the keys to the cash room. He grabbed Delgado and obliged her to call out down the hallway for Cardeenas.

Appellant once again threw Delgado against the wall, then pushed her onto her knees. He pulled a pillowcase from his pants, wrapped it around Delgado's neck and began choking her. He said, "Bitch, open the door or I'll blow your head off." Delgado could not breathe. Kimberly Gregory began screaming and appellant told her to shut up.

Yvonne Cardeenas had just walked out of the cash room when she heard her coworkers screaming and male voices demanding keys to the cash room. Cardeenas ran to a telephone and called 911. She did not see the robbers.

Meanwhile, back inside the main office, appellant turned his attention to Ray Romo. He wrapped the pillowcase around Romo's neck, searched him, and found a buck knife. Appellant placed the knife against Romo's neck and said, "Motherfucker, open the door or I'll kill you." Romo insisted that he had no keys to the cash room. Appellant then walked back to Delgado and put the knife to her throat. Delgado paged Cardeenas over the intercom. Appellant pushed Delgado to the floor and said he was going to kill her.

Appellant fetched the gun from his accomplice and held it to Delgado's head, coolly suggesting that if he killed her, he would only receive a term of

20 to 25 years. She heard him cock the weapon. Kimberly Gregory began screaming that Delgado had a child. Appellant put the weapon to Gregory's head and warned that he would kill her because "color lines" did not matter. Romo, a former police officer, observed that appellant "was orchestrating the whole thing," was in control and giving orders.

Accomplice Davis suggested that Cardeenas was probably on her way after being paged, so the two men went to the office door. Just then, uniformed security guard William Sampis arrived outside the office. Sampis carries a loaded .30-caliber service revolver. Appellant and his cohort went into the hallway and confronted Sampis. Davis pointed a gun at Sampis's face while appellant removed Sampis's gun from its holster.

When appellant and Davis went into the hallway to disarm Sampis, Romo quickly shut the office door, engaging the automatic lock. The robbers futilely tried to regain entrance to the office, then fled the store through an emergency exit.

The police arrived as appellant and his accomplice ran from the store. Appellant was captured immediately. Sampis's gun was recovered from appellant. Davis was apprehended after a brief pursuit. The police searched the escape route taken by Davis and located a loaded Glock semiautomatic .45-caliber handgun in a black plastic bag.

Appellant testified that he went to the Kmart with the intention of robbing it. He largely corroborated the victims' testimony—including the initial encounter with Delgado and Williams in the personnel office, the entry into the main office, and even his threats to kill people. Appellant conceded that he took a folding knife from Romo to use as a weapon, and that he wrapped a pillowcase around Delgado's neck and later around Romo's neck. Appellant denied threatening Gregory and Delgado with a gun, though he conceded that he put Romo's knife to both of them. Appellant testified that he removed Sampis's gun and pocketed it.

DISCUSSION

1. *Appellant Was Properly Convicted of Attempted Robbery*

■ Appellant contends that the evidence does not support his convictions for the attempted robberies of Maribel Delgado, LaTosha Williams, Estela Moreno and Kimberly Gregory (counts 3, 4, 6 and 8). Appellant reasons that his convictions cannot be sustained because the Kmart employees named in the information neither owned nor possessed the cash he

attempted to steal. The trial court thoroughly reviewed the point and concluded that the named employees were Kmart agents in constructive possession of company property at the time of the attempted robbery; therefore, the employees were robbery victims.

California follows the long-standing rule that the employees of a business constructively possess the business owner's property during a robbery. " 'Robbery is an offense against the person; thus a store employee may be the victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property.' " (*People v. Miller* (1977) 18 Cal.3d 873, 880 [135 Cal.Rptr. 654, 558 P.2d 552].) "It is no defense to a charge of robbery (or of theft) that the victim was not the true owner of the property taken." (*People v. Moore* (1970) 4 Cal.App.3d 668, 670 [84 Cal.Rptr. 771].)

As early as 1924, an appellate court determined that employees with no specific responsibility for handling cash could be named as robbery victims. For example, two janitors/watchmen working at a theater who were detained at gunpoint and tied up by robbers were properly named as robbery victims. "While these men did not own the money, nor even knew the amount in the safe, yet they were rightfully in possession of the theater and its contents at the time of the robbery and were entitled to this possession as against the defendant." (*People v. Dean* (1924) 66 Cal.App. 602, 607 [226 P. 943].) The same result was reached in the case of two janitors employed by the telephone company who were securely bound while robbers purloined cash from the company safe (*People v. Downs* (1952) 114 Cal.App.2d 758, 765-766 [251 P.2d 369]), and in a case where two automobile mechanics were held at gunpoint while the service station where they worked was robbed. (*People v. Arline* (1970) 13 Cal.App.3d 200, 202 [91 Cal.Rptr. 520].)

More recently, a mere business visitor was deemed to be a robbery victim. (*People v. Mai* (1994) 22 Cal.App.4th 117 [27 Cal.Rptr.2d 141].) In this instance, the owner of a precious metals business was being visited by his nephew when an attempted robbery occurred. The court wrote, "Assuming the nephew was no more than a visitor to the business premises and neither owned nor possessed the gold, once force and fear were applied to him in an attempt to deprive *someone, or anyone*, of property, [the nephew] became the victim of an attempted robbery. [Citation.] A robbery consists of the application of force or fear to obtain the property of another. The victim need not

own, possess, or even have the right to possess the property sought by the perpetrator." (*Id.* at p. 129.)[1]

The case that is most factually apposite is *People v. Jones* (1996) 42 Cal.App.4th 1047 [50 Cal.Rptr.2d 46]. Jones and two accomplices committed a takeover robbery at a store. As here, the armed robbers demanded the keys to the cash room while terrorizing virtually all the employees with guns and physical assaults. Among the six employees present during the takeover was the store's truck driver. Jones argued that the truck driver was not a victim because he was not in possession of company property. The court, however, found that the driver had "sufficient representative capacity with respect to the owner of the property to be the victim of robbery." (42 Cal.App.4th at p. 1054.)

We reject appellant's reliance on *People v. Guerin* (1972) 22 Cal.App.3d 775 [99 Cal.Rptr. 573], overruled on other grounds in *People v. Ramos* (1982) 30 Cal.3d 553, 589 [180 Cal.Rptr. 266, 639 P.2d 908].) The facts of *Guerin* are somewhat unclear, but it appears that the defendant robbed a supermarket at gunpoint. Present at the robbery were two cashiers, the store manager, and a box boy. Division Four of this district sustained the robbery convictions only as to the two cashiers; it reversed the conviction as to the box boy; and reduced the conviction with respect to the store manager to the lesser included offense of assault with a deadly weapon. (*Guerin, supra,* 22 Cal.App.3d at p. 782.)

*Guerin* is an anomaly in light of evolving case authority broadening the permissible range of robbery victims. All the decisions discussed above determined that business employees—whatever their function—have sufficient representative capacity to their employer so as to be in possession of property stolen from the business owner. As a result, we join our colleagues in Division Seven and decline to follow the reasoning or the result in *Guerin*. (*People v. Jones, supra,* 42 Cal.App.4th at p. 1055.)

Applying the reasoning of *People v. Jones, supra,* 42 Cal.App.4th 1047 we conclude that appellant was properly convicted of attempted robbery in counts 3, 4, 6 and 8. Personnel manager Delgado, sales associate Williams, pantry clerk Moreno, and inventory control clerk Gregory were all subjected to force or fear during appellant's attempt to steal their employer's property. Although none of these employees had Kmart cash within their immediate

---

[1]The courts are divided on the issue of whether a Good Samaritan who willingly attempts to thwart a robbery can be considered a victim of the robbery. (Compare *People v. Bekele* (1995) 33 Cal.App.4th 1457, 1461-1462 [39 Cal.Rptr.2d 797], with *People v. Galoia* (1994) 31 Cal.App.4th 595, 597 [37 Cal.Rptr.2d 117].) In any event, the case at bench does not involve a Good Samaritan.

control or possession, this is not a critical factor. The four employees had a representative capacity to Kmart and a sufficient possessory interest in their employer's property to be the victims of appellant's attempted robbery.

## 2. *A Gun Use Enhancement Was Properly Imposed*

■ Appellant contends that a gun use enhancement was improperly imposed with respect to his actions toward Kimberly Gregory because there was insufficient evidence that he ever threatened Gregory with a gun.

Maribel Delgado, Ray Romo and Maribel Arellano all testified that they saw appellant point a gun at the head of Kimberly Gregory. Gregory testified that appellant put the point of a knife to the tip of her nose. All the witnesses confirmed that at the time appellant threatened Gregory, she was screaming, in a panic, and "hysterical."

The trial court chose to credit the testimony of all four witnesses and discounted appellant's denial that he ever threatened Gregory with a gun. As Gregory testified, appellant kept switching back and forth between the knife and the gun. It is entirely plausible that Romo, Arellano and Delgado saw appellant aim a gun at Gregory's head and that Gregory either did not see appellant's gesture or was too hysterical to register the threat. Gregory was, however, very certain about the knife point touching her nose. Appellant conceded using a knife on Gregory in his testimony.

Under the circumstances, the court could reasonably determine that appellant used both a gun and a knife on Gregory. Its determination is supported by substantial evidence.

## 3. *Imposition of Both a Firearm- and a Deadly-Weapon-Use Enhancement*

■ After finding that appellant used both a gun and a knife on Kimberly Gregory, the trial court imposed two sentence enhancements for count 8. The first enhancement was three years four months for using a gun; the second enhancement was an additional, consecutive four-month term for using a knife. Appellant argues that Penal Code section 1170.1 prohibits the imposition of two such enhancements for a single offense. We agree.

Penal Code section 1170.1, subdivision (f) reads, "When two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. . . ."

Appellant used both a dangerous or deadly weapon (a knife) and a handgun in the commission of the crime charged in count 8. Section 1170.1 permits appellant's sentence to be enhanced with only the firearm-use allegation because that is the greater enhancement.

Our reading of Penal Code section 1170.1 is consistent with similar weapons enhancement statutes. For example, Penal Code section 12022.5, subdivision (f)—relating to use of a firearm during the commission of a crime—provides: "For purposes of imposing an enhancement under Section 1170.1, the enhancements under this section shall count as one, single enhancement." Thus, if appellant had used a machine gun, an assault weapon and a handgun, he could still only receive a single sentence enhancement under section 12022.5. Section 1170.1 mirrors this limitation when a defendant is armed with a firearm and some other type of dangerous or deadly weapon, such as a knife. It would be incongruous if appellant could receive a longer sentence for using a gun and a knife than he would if he used five guns, since guns are generally considered a more dangerous type of weapon.

Under the circumstances, we must stay the imposition of the additional four-month term for the knife-use enhancement. (*People v. Espinoza* (1983) 140 Cal.App.3d 564, 567 [189 Cal.Rptr. 543].) The judgment is modified accordingly.

4.  *Custody Credits*

Appellant was arrested on March 18, 1998, moments after the crime was committed. He was sentenced on May 13, 1999. At trial, defense counsel stated that appellant had spent 420 actual days in custody. Defense counsel miscalculated: appellant was actually in custody for 422 days.

As a general rule, a defendant is supposed to have the trial court correct a miscalculation of presentence custody credits. (Pen. Code, § 1237.1.) However, if—as here—there are other appellate issues to be decided, the appellate court may simply resolve the custody credits issue in the interests of economy. (*People v. Acosta* (1996) 48 Cal.App.4th 411, 427-428 [55 Cal.Rptr.2d 675].) We are already modifying the judgment to stay the imposition of an enhancement. We shall further modify the judgment to reflect custody credits of 422 actual days.

### DISPOSITION

The judgment is modified to reflect (1) a stayed enhancement of four months pursuant to Penal Code section 12022, subdivision (b)(1) as to count

8, and (2) the award of presentence custody credits of 422 days. In all other respects, the judgment is affirmed.

Cooper, J., and Mallano, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied October 25, 2000. Baxter, J., was of the opinion that the petition should be granted.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.