[No. B178046. Second Dist., Div. Six. Jan. 25, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
CLINTON DUANE CRITES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

**1252**

[redacted]

## Counsel

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Victoria B. Wilson and Sharon E. Loughner, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PERREN, J.**—Clinton Duane Crites appeals the judgment after his conviction for first degree murder (Pen. Code,[1] §§ 187, subd. (a), 189). Among other enhancement findings, the jury made true findings on separate allegations that Crites had personally used two deadly or dangerous weapons in the commission of the murder. (§ 12022, subd. (b)(1).) Crites contends there was insufficient evidence of premeditation and deliberation to support a first degree murder conviction. He also claims that the trial court erred in denying his *Marsden*[2] motion and in staying, rather than striking, one of the two section 12022, subdivision (b)(1) enhancements. We hold that the trial court properly imposed a one-year section 12022, subdivision (b) enhancement for use of one deadly weapon and imposed, but stayed, an additional enhancement under the same statute for use of a second weapon. We affirm.

### FACTS

In July and August 2003, appellant's wife Christy Crites was living in the apartment of victim Douglas Okashima. Crites and his wife had separated but he continued to visit her and their children at Okashima's apartment. Mrs. Crites moved out of the apartment in late August or early September 2003.

Crites believed that his wife was having an affair with Okashima and, in statements to friends, threatened to kill Okashima for having the affair. In September 2003, Crites told one friend that he "might have to fuck . . . up" the man his wife was staying with. About a week before the murder, he told another friend he was going to "smash" the person who was sleeping with his wife. Mrs. Crites also told the police that Crites had said "Doug's gonna get his" prior to the murder.

---

[1] All statutory references are to the Penal Code unless otherwise stated.
[2] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

During the night of September 17, 2003, Crites drove to Okashima's apartment and killed him. Okashima died of multiple stab wounds to the head, and multiple skull fractures inflicted when he was kicked by Crites, who was wearing steel-toed boots. Crites had bought the boots a week before the murder.

On September 18, 2003, after the murder, Crites told a third friend or acquaintance that he had "smashed someone." Crites also returned to Okashima's apartment for the purpose of cleaning up evidence of the crime, retrieving and disposing of the knife used in the killing, and moving Okashima's body to another location. Crites placed the body in a blue recycling bin or dumpster that was kept in the alley between a restaurant and Okashima's apartment. A still photograph from the restaurant's surveillance cameras shows that the recycling bin was in the alley at 5:22 a.m. on September 18, but another photograph showed that it had disappeared three hours later. The second photograph showed Crites climbing over the fence with something in his hands.

Crites later loaded the recycling bin containing Okashima's body onto a truck and drove the bin to the location where it was found by the police. Crites threw the knife and steel-toed boots into the ocean.

Okashima was reported to the police as missing on September 19, 2003. That evening, the police found the dumpster and Okashima's body.

Crites testified on his own behalf at trial. He testified that he drove to Okashima's apartment to collect some of his wife's belongings that she had left at the apartment when she moved out. Crites testified that when he returned to the apartment a second time to finish picking up his wife's belongings, he was greeted by an angry Okashima. After a hostile exchange of words, Okashima attacked Crites with a kitchen knife. Okashima was cut during the struggle over the knife. The knife broke when both men fell to the floor. Crites testified that he got up and kicked Okashima in the head with his steel-toed boots when Okashima grasped his leg as Crites tried to leave. Crites admitted that he may have continued to kick Okashima after he was released from Okashima's grasp. Crites considered calling an ambulance but, instead, ran from the apartment. He admitted that he returned to the apartment shortly thereafter to retrieve the knife and some of his family's property, and to clean up the apartment.

## DISCUSSION

### [[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Second Weapons Enhancement Properly Stayed*

The People alleged that Crites personally used two deadly or dangerous weapons (a knife and steel-toed boots) as separate section 12022, subdivision (b) enhancements. The jury found both allegations true, and the trial court imposed a one-year sentence for use of a knife and imposed, but stayed, a one-year sentence for use of steel-toed boots. Crites contends that two "identical" enhancements under section 12022, subdivision (b) cannot be imposed on the same offense against the same victim. Crites argues that, although stayed, imposition of the second enhancement was unauthorized. We disagree.

■ Section 1170.1, subdivision (f) provides that, "[w]hen two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. . . ." This language prevents execution of sentences for multiple enhancements, but not the procedure of imposing but staying all but the greatest enhancement falling within the statute. (*People v. Jones* (2000) 82 Cal.App.4th 485, 492–493 [98 Cal.Rptr.2d 329]; *People v. Espinoza* (1983) 140 Cal.App.3d 564, 567 [189 Cal.Rptr. 543].)

In the *Jones* case, the trial court imposed enhancements for personal use of a handgun (§ 12022.5) and personal use of a knife (§ 12022, subd. (b)) with respect to the same offense against the same victim. The appellate court concluded that section 1170.1 required the court to stay the lesser section 12022, subdivision (b) enhancement. (*People v. Jones, supra*, 82 Cal.App.4th at p. 493.)

■ Crites concedes that *Jones* applies when one enhancement is lesser than the other, but argues that, when the enhancements are equal, one must be stricken, and not stayed. Crites presents no persuasive argument for this distinction, and it is not supported by legal authority. " 'A stay is a temporary suspension of a procedure in a case until the happening of a defined contingency . . . ,' " whereas striking an enhancement " '. . . implies that the enhancement is legally insupportable, and must be dismissed . . . .' " (*People v.*

---

*See footnote, *ante*, page 1251.

*Carrillo* (2001) 87 Cal.App.4th 1416, 1421 [105 Cal.Rptr.2d 360].) ■ Here, there is no basis to reject the jury's factual findings as to both personal use allegations, and a reversal on appeal of one enhancement is a "defined contingency" where imposition of a term of imprisonment for the other would be warranted. The trial court properly imposed both enhancements, but stayed execution of one of them.

The judgment is affirmed.

Gilbert, P. J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 26, 2006, S141580.