Filed 5/23/14  In re A.W. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>A.W.,<br><br>        Defendant and Appellant. | C072616<br>(Super. Ct. No. 69198) |

A.W. (the minor) forcibly removed a necklace from Jenny P.'s neck and ran away with it.  Jenny's boyfriend, Dylan, gave chase.  When Dylan caught up to A.W. and demanded the necklace be returned, he was beaten and rendered unconscious by the minor and several of his friends.

The minor was adjudicated a ward of the juvenile court (Welf. & Inst. Code, § 602) based upon findings he committed the crimes of robbery and assault with force

1

likely to produce great bodily injury. (Pen. Code, §§ 211, 245, subd. (a)(4).)[1] He was committed to juvenile hall for a period of 45 days, with 21 days credit for time served; an additional commitment of 90 days was suspended pending a successful school review. On appeal, the minor argues: (1) the evidence was insufficient to support the true findings for robbery and assault with force likely to produce great bodily injury; (2) the maximum term of confinement found by the juvenile court must be modified to reflect that any sentence imposed for the assault must be stayed pursuant to section 654; and (3) the juvenile court improperly imposed a $100 fine pursuant to Welfare and Institutions Code section 731 without finding an ability to pay.

We affirm. Substantial evidence supports the juvenile court's findings the minor committed the crime of robbery when he forcibly removed Jenny's necklace and committed the crime of assault with force likely to produce great bodily injury when he and his friends beat Dylan to the point of unconsciousness. Section 654 does not apply to reduce the maximum term of confinement because the robbery and the assault were committed against separate victims. And the minor's claim the juvenile court improperly imposed the $100 fine without finding an ability to pay is forfeited because the minor failed to object to this fine when it was imposed.

FACTS

On January 25, 2012, around 3:20 p.m., Jenny and Dylan were walking together near Edison High School in Stockton. Jenny's friend, K., was also there. Jenny and K. attended Edison; Dylan attended McNair High School. As the threesome walked past a larger group, who also appeared to be "high school age," the minor emerged from the group and grabbed Jenny's necklace from around her neck. The force of the pull caused the necklace to break, but not before creating a red ligature mark on her neck. As the

---

[1] Undesignated statutory references are to the Penal Code.

2

minor ran off with the necklace, Jenny yelled: "Ow, babe, my necklace." This prompted Dylan to take off his jacket and chase after the minor. The minor's group "backed him up." One member of the group stepped in front of Dylan and "hit [him] with his shoulder." When Dylan continued his pursuit, other members of the group chased after Dylan, saying, "let's go, let's go."

Dylan caught up to the minor a short distance away and demanded: "Give me the necklace back." Unfortunately, the rest of the minor's group also caught up to Dylan and began hitting him from behind. Dylan fell to his knees. At this point, the minor hit Dylan in the face with an open fist, causing him to fall to the ground. The minor and others in the group then "stomped" Dylan while he was on the ground. He could not tell how many people kicked him because he "blacked out." When Dylan regained consciousness, he was surrounded by people who were trying to help him. An ambulance arrived a short time later and took him to the hospital.

The next day, Jenny, Dylan, and K. each identified the minor as the perpetrator in separately administered photo lineups. They also positively identified him during the jurisdictional hearing.

## DISCUSSION

### I

### *Sufficiency of the Evidence*

The minor contends the evidence was insufficient to support the true findings for robbery and assault with force likely to produce great bodily injury. We disagree.

" 'The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials.' [Citation.] Thus, 'we must apply the same standard of review applicable to any claim by a criminal defendant challenging the sufficiency of the evidence to support a judgment of conviction on appeal. Under this standard, the critical inquiry is "whether, after reviewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] An appellate court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.]' " (*In re Cesar V.* (2011) 192 Cal.App.4th 989, 994, quoting *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371; *People v. Johnson* (1980) 26 Cal.3d 557, 578; *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320 [61 L.Ed.2d 560, 572-574].)

With these legal principles in mind, we address and reject each of the minor's sufficiency of the evidence claims.

## A.

### *Robbery*

#### 1. *Identification*

The minor challenges the sufficiency of the evidence establishing he was the one who took Jenny's necklace, arguing, "there were too many inconsistencies to render the testimony of Jenny and [K.] and Dylan sufficiently reliable under the standards discussed above." He is mistaken.

Jenny and K. each identified the minor as the person who took the necklace in separate photo lineups and also positively identified him during the jurisdictional hearing. Jenny testified the minor was standing in a group of about 10 teenagers when she first saw him. As she walked past with Dylan and K., Jenny "had a feeling something was next to [her]" and turned around. At this point, she saw the minor grab her necklace and run off with it. He was wearing a gray hooded sweatshirt with white stripes. The hood was pulled over his head, but she could see his face "a little bit." Jenny also testified she believed K. yelled out the minor's name when he took the necklace. Dylan chased after

4

the minor in an attempt to retrieve Jenny's necklace. K.'s testimony paralleled that of Jenny. The minor was standing in a large group before he took the necklace. He was wearing a hooded sweatshirt. After he took the necklace, Dylan chased after him. On direct examination, K. testified she did not remember whether or not the hood was pulled over the minor's head, but she did remember being able to see his face. During cross-examination, K. initially testified the hood was over his head, but then said she did not remember. She remained firm that she could see his face. K. did not remember the color of the sweatshirt. She further testified she told Jenny the minor's name after he took the necklace, but denied yelling out his name when he took it.

Dylan did not see the minor take the necklace. He heard Jenny say, "Ow, babe, my necklace," and then chased after the minor, who was running away. It was not until Dylan caught up to the minor a short distance away that he saw the minor's face. Dylan testified the minor was wearing a black hooded sweatshirt with the hood pulled over his head and the strings drawn tightly around his face. Despite the fact the minor's face was mostly covered, Dylan "saw his eyes." After demanding the necklace be returned, Dylan was hit from behind by several of the minor's friends. The minor then participated in the beating that sent Dylan to the hospital. Like Jenny and K., Dylan identified the minor both in a photo lineup and during the jurisdictional hearing.

The foregoing evidence is more than substantial. "[T]he testimony of a single witness is sufficient for the proof of any fact." (*People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031.) Here, we have two witnesses who identified the minor as the person who grabbed Jenny's necklace and ran off with it. Jenny and K. further testified Dylan chased after the minor. While Dylan did not see the minor take the necklace, he identified the minor as the person he chased after and who assaulted him with the help of several others. The few inconsistencies in the testimony of these witnesses do not render the evidence insubstantial. "[T]o entitle a reviewing court to set aside a finding of guilt

5

the evidence of identity must be so weak as to constitute practically no evidence at all. [Citations.] The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, the uncertainty of recollection, and the qualification of identity and lack of positiveness in testimony are matters which go to the weight of the evidence and the credibility of the witnesses and are for the observation and consideration of the trier of fact, whose determination will stand unless the testimony is inherently incredible. [Citations.]" (*In re Corey* (1964) 230 Cal.App.2d 813, 825-826; *People v. Mohamed* (2011) 201 Cal.App.4th 515, 522.)

Nor are we persuaded by the minor's argument that "the identifications overall were tainted and therefore unreliable." The minor points out K. either "yelled out [his] name" when the necklace was taken or "told Jenny who the robber was" as they walked back to Edison after the incident occurred, but does not explain how this would undermine their subsequent identifications. Jenny, K., and Dylan picked the minor out of a photo lineup that did not include his name. The identifications were not tainted.

### 2. *Use of Force*

In a related argument, the minor contends the robbery finding "may not stand" because "the force that was used to take Jenny's necklace was only that which was required to complete the taking and no more." Not so.

This case is analogous to the situation in *People v. Lescallett* (1981) 123 Cal.App.3d 487, in which the defendant ran up to the victim and forcefully removed a purse from her hand. The Court of Appeal held the evidence to be "sufficient to support [the jury's] verdict of robbery," explaining: "We note initially that: ' "The degree of force used is immaterial. All the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance . . . ." ' [Citation.] [¶] The nonconsensual snatching of a purse has been held to entail such force as to permit a jury to return a verdict of robbery. 'Where property is snatched from the person

6

of another . . . the crime amounts to robbery.' [Citations.]" (*Id.* at p. 491; see also *People v. Roberts* (1976) 57 Cal.App.3d 782, 787 [robbery conviction supported by substantial evidence where "purse was grabbed with such force that the handle broke"], overruled on another point in *People v. Rollo* (1977) 20 Cal.3d 109, 120, fn. 4, in turn superseded by statute as stated in *People v. Olmedo* (1985) 167 Cal.App.3d 1085, 1095–1096.) Here, Jenny's necklace was taken with enough force to break it against her neck, causing a red ligature mark. The juvenile court's implied finding the necklace was taken by force is supported by substantial evidence.[2]

## B.

### *Assault with Force Likely to Produce Great Bodily Injury*

The minor also challenges the sufficiency of the evidence establishing he assaulted Dylan with force likely to produce great bodily injury, arguing: "It cannot be said that [the act of] slapping Dylan with an open hand should be able to be construed as the kind of act that could result in great bodily injury." Acknowledging "one or more of [his] group of friends attacked Dylan from behind," he argues, "there was no evidence that any of these boys used anything but their hands and feet" and "there was no evidence of a conspiracy or agreement of any kind between [the minor] and these boys that the boys should attack Dylan when he ran up to [the minor] and demanded that the necklace be returned." We are not persuaded.

"That the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury' is well established . . . ." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) Whether the use of hands or fists "would be likely to cause great bodily injury is to be determined by the force of the impact, the

---

[2]     This conclusion makes it unnecessary to address the minor's contention the assault on Dylan cannot be used to support both the force element of robbery and the separate crime of assault with force likely to produce great bodily injury.

manner in which it was used and the circumstances under which the force was applied." (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748-749.) While not conclusive, the fact that an assault actually results in great bodily injury, i.e., "bodily injury which is significant or substantial, not insignificant, trivial or moderate," is highly probative on the issue of whether the force used was likely to produce such injury. (*Id*. at p. 748.)

Here, the minor actively participated in a group beating that sent Dylan to the hospital. After members of the minor's group hit Dylan from behind and knocked him to his knees, the minor hit Dylan in the face with an open fist and, along with other group members, kicked Dylan until he lost consciousness. There can be no doubt the beating as a whole was likely to produce—and did in fact produce—great bodily injury. Moreover, even if we were to agree with the minor that his contribution to the assault, in and of itself, was not likely to produce great bodily injury, he nevertheless "aid[ed] or abet[ted] the crime [and] may be found guilty of an assault by means of force likely to produce great bodily injury" on that basis. (*People v. Brown* (1980) 110 Cal.App.3d 24, 34.) Substantial evidence supports the finding the minor committed the crime of assault with force likely to produce great bodily injury.[3]

## II

### *Section 654*

The minor also claims the maximum term of confinement found by the juvenile court must be modified to reflect that any sentence imposed for the assault must be stayed pursuant to section 654. We disagree.

---

[3]    This conclusion makes it unnecessary to address the minor's claim the assault finding "may not stand as it is a 'lesser included offense' of robbery." This claim is premised on the theory the assault on Dylan was not accompanied by force likely to produce great bodily injury, but was instead a simple battery. It is also premised on the theory the assault on Dylan was the application of force that transformed a petty theft into a robbery. We have rejected both theories.

8

Section 654, subdivision (a), provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

This section "prohibits punishment for two crimes arising from a single indivisible course of conduct. [Citation.] If all of the crimes were merely incidental to, or were the means of accomplishing or facilitating one objective, a defendant may be punished only once. [Citation.] If, however, a defendant had several independent criminal objectives, he may be punished for each crime committed in pursuit of each objective, even though the crimes shared common acts or were parts of an otherwise indivisible course of conduct. [Citation.] The defendant's intent and objective are factual questions for the trial court, and we will uphold its ruling on these matters if it is supported by substantial evidence. [Citation.]" (*People v. Perry* (2007) 154 Cal.App.4th 1521, 1525; *People v. Latimer* (1993) 5 Cal.4th 1203, 1208, 1216-1217; *People v. Correa* (2012) 54 Cal.4th 331, 341.)

In *People v. Miller* (1977) 18 Cal.3d 873 (*Miller*), overruled on another ground as stated in *People v. Oates* (2004) 32 Cal.4th 1048 at pages 1067-1068, footnote 8, the defendant was convicted of first degree robbery, first degree burglary, and assault with a deadly weapon. (*Miller*, *supra*, 18 Cal.3d at p. 877.) He and an accomplice entered a jewelry store with the intent to steal jewelry. While the accomplice was being helped by the sales clerk, the defendant approached the security guard, announced the purpose of their visit, and attempted to pull a gun. A struggle for the gun ensued. The defendant shot the security guard. The accomplice also pulled a gun and ordered the clerk onto the floor. The robbers then broke into two display cases and made off with a substantial amount of jewelry. (*Id*. at pp. 878-879.) Applying the foregoing intent and objective test, our Supreme Court explained: "It appears clear . . . that in the instant case [the]

9

defendant entertained but a single criminal objective—to commit a theft of the contents of the jewelry store—and that those acts which constituted the burglary, the robbery and the assault were performed only as incidental objectives to that principal objective." (*Id.* at p. 885.) Nevertheless, the court held the defendant could be separately punished for the burglary and the robbery because each was a violent crime committed against a separate victim, i.e., the robbery was committed against the sales clerk and the burglary was committed against the security guard. (*Id.* at pp. 885-886.) Punishment for the assault, however, was precluded by section 654 because "[t]hat crime was committed during the same course of conduct and against the same victim as in the case of the aggravated burglary conviction." (*Id.* at p. 886.)

Here, it appears the minor entertained a single criminal objective—to steal a necklace—when he forcibly removed the necklace from Jenny's neck and ran off with it (the robbery) and then joined in a group beating of Dylan to effect his escape with the property (the assault with force likely to produce great bodily injury). We note there is a point at which the amount of force used in a subsequent assault "may evince 'a different and a more sinister goal than mere successful commission of the original crime,' i.e., an independent objective warranting multiple punishment." (*People v. Perry*, *supra*, 154 Cal.App.4th at p. 1527; see also *People v. McGahuey* (1981) 121 Cal.App.3d 524, 528-529 [multiple punishment permissible for burglary in which money and hatchet stolen from home and assault with a deadly weapon in which defendant threw hatchet through window from outside house at victim who was calling police].) However, we need not determine whether that point was reached in this case. Like *Miller*, *supra*, 18 Cal.3d 873, the minor may be separately punished for the robbery and the assault because each was a violent crime committed against a separate victim, i.e., the robbery was committed against Jenny and the assault was committed against Dylan. Section 654 does not apply to reduce the maximum term of confinement.

## III

### *Forfeiture*

Finally, we conclude the minor's claim the juvenile court improperly imposed a $100 fine pursuant to Welfare and Institutions Code section 731 without finding an ability to pay is forfeited because the minor failed to object to this fine when it was imposed.

"In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have *required* parties to raise certain issues at the time of sentencing. In such cases, lack of a timely and meaningful objection forfeits or waives the claim." (*People v. Scott* (1994) 9 Cal.4th 331, 351; see also *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 [stating the correct legal term for loss of right based on failure to assert it in a timely fashion is forfeiture, not waiver].) This forfeiture doctrine applies to claims of sentencing error asserted by both the People and the defendant. (*People v. Tillman* (2000) 22 Cal.4th 300, 303.) "Thus, all 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' raised for the first time on appeal are not subject to review." (*People v. Smith* (2001) 24 Cal.4th 849, 852.) However, there is a "narrow exception" to this forfeiture rule for sentences that are unauthorized or entered in excess of jurisdiction: "Because these sentences 'could not lawfully be imposed under any circumstance in the particular case' [citation], they are reviewable 'regardless of whether an objection or argument was raised in the trial and/or reviewing court.' [Citation.]" (*People v. Smith*, *supra*, 24 Cal.4th at p. 852.) Our Supreme Court has "deemed appellate intervention appropriate in these cases because the errors presented 'pure questions of law' [citation], and were 'clear and correctable' independent of any factual issues presented by the record at sentencing.' [Citation.] In other words, obvious legal errors at sentencing that

11

are correctable without referring to factual findings in the record or remanding for further findings are not [forfeited]." (*Ibid.*)

In *People v. McCullough* (2013) 56 Cal.4th 589, our Supreme Court held the defendant forfeited his challenge to the sufficiency of the evidence supporting the finding he had the ability to pay a jail booking fee by failing to object in the trial court. (*Id.* at pp. 591, 598.) "Defendant may not 'transform . . . a factual claim into a legal one by asserting the record's deficiency as a legal error.' [Citation.] By 'failing to object on the basis of his [or her] [ability] to pay,' defendant forfeits both his [or her] claim of factual error and the dependent claim challenging 'the adequacy of the record on that point.' [Citations.]" (*Id.* at p. 597; see also *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468 ["defendant should not be permitted to assert for the first time on appeal a procedural defect in imposition of a restitution fine, i.e., the trial court's alleged failure to consider defendant's ability to pay the fine"]; *People v. Crittle* (2007) 154 Cal.App.4th 368, 371 [failure to object to a crime prevention program fine forfeits the claim the trial court failed to consider ability to pay the fine and the record did not support such an ability]; *People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1070-1072, 1076 [defendant forfeited claim that, while the probation report recommended a $250 probation fee, neither the probation officer nor the trial court expressly found an ability to pay].)

Here, the juvenile court imposed a $100 fine pursuant to Welfare & Institutions Code section 731, subdivision (a)(1), which provides the juvenile court with discretion to "[o]rder the ward to make restitution, to pay a fine up to two hundred fifty dollars ($250) for deposit in the county treasury if the court finds that the minor has the financial ability to pay the fine, or to participate in uncompensated work programs." Whether the minor possesses an ability to pay the $100 fine is a factual issue. Failure to object to imposition of the fine on this basis forfeits the issue on appeal.

12

DISPOSITION

The judgment is affirmed.

                                                                        HOCH    , J.

We concur:

    MURRAY   , Acting P. J.

    DUARTE   , J.