Filed 6/24/15  P. v. Peterson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEMUS LUSHAN PETERSON,<br><br>    Defendant and Appellant. | D067439<br><br><br>(Super. Ct. No. FWV1201336) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Stephan G. Saleson, Judge.  Reversed in part, affirmed in part, and remanded for findings regarding calculation of custody credits.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Colton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendant Demus Lushan Peterson appeals from a judgment of conviction for first degree murder. Peterson was arrested, tried and convicted for a cold case shooting that occurred in 1994 in Ontario, California.

Peterson contends that the trial court prejudicially erred in permitting the jury to hear evidence that he possessed two loaded firearms months after the murder, and further contends that he is entitled to additional custody and conduct credits beyond what the trial court calculated.

We reject Peterson's argument that the trial court prejudicially erred in admitting evidence of Peterson's possession of two firearms approximately four and a half months after the murder. With respect to Peterson's contention that he is entitled to additional custody and conduct credits, we agree that Peterson may be entitled to additional credits, but remand the matter for the trial court to make certain necessary factual determinations and to then recalculate the credits to which Peterson is entitled.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Adrian Sutton and Buster Shackelford met in Florida in 1994. Shackelford, who was a long-haul truck driver, was preparing to drive a load to California and offered Sutton a ride to San Diego, which Sutton accepted. On December 29, 1994, Sutton and Shackelford stopped at an Ontario truck stop. After purchasing some beer and food,

2

Sutton and Shackelford drove to an adjacent dark parking lot that was known for drug sales. The pair was looking to buy drugs.

Sutton saw three men leaning against a red car. Shackelford spoke to one of the men, and that man climbed up into the driver's side of the cab. Shackelford and the man discussed a drug purchase. As Shackelford spoke with the man, a second man climbed up to the passenger side door where Sutton was sitting. The man grabbed a handrail bar outside of the passenger door and motioned for Sutton to let him in, but she refused. The man then walked around to the driver's side of the truck and climbed in behind Shackelford, who was sitting in the driver's seat.

Sutton noticed that the second man appeared to be hiding something in his hand. She saw the man, who was now sitting behind Shackelford, point a gun at Shackelford's head. Sutton thought the gun was a revolver, since it had a "wheel." The men demanded Shackelford's money. Shackelford told the men that he had given them what he had. The second man rummaged around behind the two front seats in the cab, found a duffel bag, and tossed it to a third man who was waiting outside the truck. The first man then got out of the truck, leaving the second man, Shackelford and Sutton inside the cab. The second man turned to Sutton and, apparently referring to Sutton's jacket, said, "Take it off, bitch." Sutton jumped out of the truck to run. Just as she exited the cab of the truck, she heard a single gunshot.

A police investigation into Shackelford's murder revealed that he had been shot from inside the truck cab, from behind, at close range. The gunshot was fatal. Police did

3

not find a shell casing, which was consistent with the bullet having been fired from a revolver.

A forensic technician recovered a fingerprint from the truck's passenger side handrail bar, just where Sutton said the second man had grabbed onto the truck. Police were not able to match that fingerprint to a suspect at the time.

In 2010, an Ontario police detective began reviewing the case file from Shackelford's 1994 murder. In 2012, the detective learned that the fingerprint left on the passenger side handrail bar matched Peterson's fingerprint. At this point in time, Peterson was living in Florida.

The detective contacted Sutton. Sutton was presented with a photographic lineup, and she identified Peterson as the person who shot Shackelford. At trial, Sutton stated that she was "positive" that Peterson was the individual who shot Shackelford.

For purposes of trial, the parties stipulated that on December 29, 1994, Peterson owned a "red vermillion" car. The jury was provided a paint sample depicting that color.

The jury convicted Peterson of first degree murder (Pen. Code, § 187, subd. (a)),[1] and found true the allegation that Peterson personally used a firearm in the commission of the murder (§ 12022.5, subd. (a)).

The trial court sentenced Peterson to a term of 35 years to life in state prison. Peterson filed a timely notice of appeal.

_____

[1]     Further statutory references are to the Penal Code unless otherwise indicated.

4

### III.

### DISCUSSION

A.     *The trial court did not abuse its discretion in admitting evidence regarding Peterson's uncharged gun possession*

In a motion in limine filed prior to trial, the prosecutor requested to be allowed to introduce evidence that Peterson possessed two loaded guns approximately four and a half months after Shackelford's murder. The prosecutor argued that this evidence was circumstantial evidence relevant to prove the charged crime. The prosecutor noted that a revolver was used in Shackelford's murder, and one of the guns that Peterson possessed was a revolver. The attorneys argued over the relevance of the fact that Peterson had pled guilty to the possession of the firearms charge. The trial court ruled that it would allow the prosecutor to present evidence of the gun incident, but would not permit the prosecutor to tell the jury that Peterson had pled guilty to gun possession.

During trial, the prosecutor introduced evidence that approximately four and a half months after Shackelford's murder, an Anaheim police officer initiated a routine traffic stop. When the car that was the subject of the traffic stop came to a stop, Peterson, who had been in the passenger seat, jumped out of the vehicle and ran off. However, very soon after running off, Peterson returned. The officer noticed that Peterson's shoes appeared to have "fresh dirt" on them. Another officer searched the area where Peterson had run. The officer found two loaded guns on the ground—a .357 caliber revolver and a .38 caliber automatic. The ground was wet at the time, but the guns were dry.

5

The trial court instructed the jury with CALCRIM No. 375, limiting the jury's use of the evidence regarding Peterson's gun possession in 1995 and treating the evidence as uncharged crime evidence. The instruction given was as follows:

> "The People presented evidence of other acts by the defendant that were not charged in this case. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged acts. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged act, you may, but are not required to, consider that evidence for the limited purpose of deciding [¶] 1.) Identity: was the defendant the person who committed the crime alleged in this case[?] [¶] Do not consider this evidence for any other purpose except for the limited purpose of identity. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged act, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Murder or Personal Use of a Firearm during the Commission of a Felony. The People must still prove the charge and allegation beyond a reasonable doubt."

Peterson contends that the trial court's admission of the evidence regarding his "mere possession of a revolver under extremely different circumstances four months [after the murder]" was an abuse of the court's discretion and violated his right to due process. According to Peterson, evidence regarding the uncharged gun possession "was not relevant to show his identity as the shooter." He asserts that the evidence of his possession of a revolver and a semiautomatic firearm four months after the Shackelford killing "could only have been relied on for an impermissible basis—to show appellant's character for possessing weapons." In essence, Peterson contends that this was improper "propensity" evidence under Evidence Code section 1101, subdivision (a).[2] We disagree.

---

2      Evidence Code section 1101 provides in relevant part:

As we explain below, the trial court properly admitted the gun evidence because such evidence constituted relevant circumstantial evidence tending to link Peterson to the charged offense. In addition, the trial court guarded against any improper use of the evidence by the jury to prove Peterson's disposition to commit bad acts by providing an appropriate limiting instruction.[3]

"We review for an abuse of discretion the trial court's rulings on the admissibility of evidence." (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1095.) In considering whether a trial court abused its discretion in admitting certain evidence, it is clear that the court may allow the prosecution to introduce a defendant's "bad acts" when they are offered to prove some disputed fact, as opposed to the defendant's general bad character or propensity to commit crime. (*People v. Daniels* (1991) 52 Cal.3d 815, 857 ["As long as there is a direct relationship between the [bad act] and an element of the charged

---

"(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act."

[3] To the extent Peterson contends that the trial court admitted the evidence of Peterson's possession of a revolver months after the murder in order to prove his identity by demonstrating his commission of an uncharged offense that was similar to the charged offense (i.e. a "signature" crime), we disagree that this was the purpose for which the evidence was offered or admitted. The evidence was not offered because of its similarity to the charged crime, but, rather, because it constituted relevant circumstantial evidence tending to directly connect Peterson to the charged crime.

offense, introduction of that evidence is proper"].)  With respect to a defendant's possession of a weapon, the applicable rule is as follows:  "When the specific type of weapon used to commit a homicide is not known, it may be permissible to admit into evidence weapons found in the defendant's possession some time after the crime that could have been the weapons employed.  There need be no conclusive demonstration that the weapon in defendant's possession was the murder weapon.  [Citations.]  When the prosecution relies, however, on a specific type of weapon, it is error to admit evidence that other weapons were found in his possession, for such evidence tends to show, not that he committed the crime, but only that he is the sort of person who carries deadly weapons."  (*People v. Riser* (1956) 47 Cal.2d 566, 577, disapproved of on other grounds in *People v. Chapman* (1959) 52 Cal.2d 95, 98.)  Further, weapons that are relevant to the commission of an offense may be admissible, even if not the actual murder weapon.  (*People v. Cox* (2003) 30 Cal.4th 916, 956-957, disapproved of on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Applying these rules in *People v. Carpenter* (1999) 21 Cal.4th 1016, 1052 (*Carpenter*), the Supreme Court determined that the trial court had not erred in permitting evidence regarding the defendant's possession of/discussion of his possession of a firearm.  In *Carpenter*, the trial court had permitted the prosecutor to elicit evidence to the effect that, in the year after some of the charged murders but prior to one of the charged murders, the defendant told a witness that he "carried a gun in his van" and had

8

shown another witness a gun that " 'look[ed] like' " the murder weapon. (*Ibid*.) The Supreme Court stated:

> "Although the witnesses did not establish the gun necessarily was the murder weapon, it might have been. Unlike *People v. Riser*, *supra*, 47 Cal.2d at page 577, this evidence did not merely show that defendant was a person who possesses guns, but *showed he possessed a gun that might have been the murder weapon after the first and before the last of the killings*. The evidence was thus relevant and admissible as circumstantial evidence that he committed the charged offenses. [Citation.]" (*Carpenter*, *supra*, 21 Cal.4th at p. 1052, italics added.)

Evidence that Peterson possessed a revolver that might have been the murder weapon was relevant and admissible as circumstantial evidence that Peterson committed the charged crime, and was not simply propensity evidence. Sutton testified that the gun used in the murder was a revolver, a type of gun with which she was familiar. She believed that the gun was a revolver because it "had the wheel." In addition, police did not find a shell casing at the scene, which provided circumstantial evidence that the murder weapon was a revolver.

Peterson's defense at trial was that although he was present during Shackelford's murder, he did not do the shooting. Peterson challenged Sutton's identification of him as the shooter, arguing that her identification was weak and not believable, in part because she was an admitted drug addict at the time and had been drinking on the day of the murder. Evidence demonstrating that Peterson possessed a weapon that might have been the murder weapon, and that was of the type that Sutton identified as being the murder weapon, was circumstantial evidence that tended to support Sutton's version and negate Peterson's version. The fact that Peterson, whom Sutton identified as the shooter, was

9

found in possession of a revolver within months of the murder, was thus clearly relevant circumstantial evidence that Peterson committed Shackelford's murder.

Peterson's reliance on *People v. Barnwell* (2007) 41 Cal.4th 1038 (*Barnwell*) is misplaced. In *Barnwell*, the Supreme Court found that the trial court had committed harmless error in admitting evidence that approximately a year prior to the charged murder, the defendant possessed a firearm that the facts reasonably demonstrated could not have been the murder weapon. (*Id*. at p. 1044.) The court stated, "When the prosecution relies on evidence regarding a specific type of weapon, it is error to admit evidence that other weapons were found in the defendant's possession, for such evidence tends to show not that he committed the crime, but only that he is the sort of person who carries deadly weapons." (*Id*. at p. 1056.) Further, the evidence was admitted specifically to demonstrate the defendant's " '*propensity* to own or carry that type of weapon.' " (*Ibid*.) In *Barnwell*, the Supreme Court concluded that the admission of evidence regarding the defendant's prior gun possession was error, precisely "[b]ecause the prosecution did not claim the weapon found by Officer Flores [a year prior to the murder] was the murder weapon." (*Ibid*.) Here, in contrast, the revolver at issue *might* have been the murder weapon.

We acknowledge that the trial court permitted the prosecutor to elicit testimony regarding the fact that the revolver was found together with a loaded semiautomatic weapon, which was unlikely to have been the murder weapon. As a result, evidence regarding this second weapon may not have been admissible as circumstantial evidence

10

that Peterson was the shooter in this case. However, even if we were to assume that the admission of evidence regarding this second weapon was error, Peterson cannot demonstrate that he was prejudiced by its admission.

The erroneous admission of other bad acts evidence is harmless if it does not appear reasonably probable that without the error, a result more favorable to the defendant would have been reached. (*People v. Malone* (1988) 47 Cal.3d 1, 22 [error in admitting Evid. Code, § 1101 evidence reviewed under standard provided in *People v. Watson* (1956) 46 Cal.2d 818, 836].) We conclude that the admission of evidence that Peterson possessed a semiautomatic firearm was harmless under any standard of harmlessness review.

First, the trial court provided the jury with a limiting instruction regarding the use of this evidence. Specifically, the court instructed the jury that it could not use this evidence to conclude that Peterson has a bad character or is disposed to commit crimes, and the court clarified that this evidence was not sufficient by itself to prove that Peterson committed the charged offenses. Further, the evidence against Peterson was overwhelming. At trial, Sutton testified that she was "positive" that Peterson was the shooter. In addition, Sutton had identified Peterson in a photographic lineup and "started crying" when she saw Peterson's photograph. Further, forensic evidence supported Sutton's version of events, since Peterson's fingerprint was found on the side of the truck, exactly where Sutton described the shooter having placed his hand. Sutton had clearly seen the second robber, given that he had tried to get into the truck's cab through the

11

passenger side door.  Given the state of the evidence, we are convinced that Peterson would not have obtained a more favorable result if the jury had not heard evidence that Peterson was found in possession of a semiautomatic firearm approximately four and a half months after Shackelford's murder.

B.    *Peterson is entitled to custody credit for the time he spent in custody in Florida, but the number of days to which he is entitled should be determined by the trial court*

Peterson contends that the trial court failed to properly calculate his presentence custody credits, in that he was not given credit for time he spent in custody in Florida, prior to being extradited to California.

The trial court awarded Peterson custody credit for 580 days of actual custody, based on the probation officer's report, which noted that Peterson had been in custody in California from July 8, 2012, until he was sentenced on February 7, 2014.  It is undisputed that Peterson was in custody in California beginning on July 8, 2012.  However, Peterson contends that he was arrested in Florida on June 13, 2012, due solely to the offenses for which he was charged in this case, and that he is therefore entitled to custody credit for the period from June 13 through July 7, 2012.

The People contend that the record does not demonstrate that Peterson was arrested on June 13, 2012.  The People point to the probation officer's report, which states that the date of Peterson's arrest was July 8, 2012.

Section 1237.1 provides: "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence

12

custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court." Peterson acknowledges that he did not seek correction in the trial court, but argues that this is simply a "legal issue" and therefore, he "did not need to present the issue to the trial court before raising it on appeal."

Although section 1237.1 appears to require every defendant to first seek correction in the trial court regarding custody credit, we acknowledge that there may be situations where an appellate court "may simply resolve the custody credits issue in the interests of economy" when there are other appellate issues to be decided. (*People v. Jones* (2000) 82 Cal.App.4th 485, 493.) However, this exception to the general rule does not apply in this case, because judicial economy would not be served by having this court make a determination about the custody credit issue that Peterson raises. Peterson does not contend that the trial court simply miscalculated the number of credits to which he is entitled. Rather, the issue that Peterson raises hinges on a factual question that must be answered—i.e., on what date was Peterson arrested for this crime? The parties disagree as to the answer to this underlying question, and the record on this point is, in our view, ambiguous.[4] We conclude that this factual determination is one for the trial court to

---

[4]    Although a detective involved in the investigation testified that Peterson was arrested on June 13, 2012, that detective also testified that "maybe about a week later he left Florida." The record unequivocally demonstrates that the first date for which

make.  We therefore remand the matter for the trial court to ascertain the correct date of arrest and incarceration for purposes of calculating Peterson's presentence custody credits.

C.      *Peterson may also be entitled to conduct credits for the time he served in custody prior to conviction*

Peterson contends that he is entitled to conduct credits for time he served in custody prior to being sentenced for Shackelford's murder.  The People agree with Peterson that he may be entitled to presentence conduct credits.

A defendant is entitled to presentence conduct credits under section 4019 "unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned" (*id*., subd. (b)) or has "not satisfactorily complied with the reasonable rules and regulations established by the [local custodial authority]" (*id*., subd. (c)).

Because the Shackelford murder occurred in 1994, the 1994 statutory framework for calculating the number of presentence conduct credits to which Peterson may be entitled applies, if it appears by the record that he satisfactorily performed labor as assigned and complied with the rules and regulations.  In 1994, section 2933.1, subdivision (c) limited presentence conduct credits for those who committed violent

Peterson was under arrest in California was July 8, 2012, which is nearly a month, not a week, after June 13.

14

felonies, such as murder, to 15 percent.  (Stats. 1994, ch. 713, § 1.)[5]  As a result, Peterson

may be entitled to conduct credits at 15 percent of his actual custody credits.[6]

We cannot determine in this appeal (a) whether Peterson is, in fact, entitled to

conduct credits because he satisfactorily performed assigned labor and/or complied with

rules and regulations, or (b) the number of actual custody credit days to which Peterson is

entitled, which serves as the basis for calculating any conduct credits to which he may be

entitled.  We therefore order the trial court to also determine whether Peterson is entitled

to conduct credits at 15 percent, and, if so, to calculate the number of conduct credits to

which he is entitled.

---

[5]     Currently, section 2933.2 prohibits those convicted of murder from accruing any
conduct credits.  This provision was not enacted until 1996, and it expressly provides that
it "shall only apply to murder that is committed on or after the date on which this section
becomes operative." (§ 2933.2, subd. (d).)

[6]     Because the trial court did not believe that Peterson was eligible to earn any
custody credits as a result of his crime, the court made no determination as to whether he
would be entitled to such credits based on his conduct while in custody.

IV.

DISPOSITION

The judgment is reversed only with respect to the award of presentence custody credits. The matter is remanded to the trial court for the limited purpose of conducting further proceedings to determine the correct number of custody and conduct credits to which Peterson may be entitled. After doing so, the trial court shall amend the abstract of judgment and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects the judgment is affirmed.

 

 

 
_____

AARON, J.

WE CONCUR:

_____

NARES, Acting P. J.

_____

McDONALD, J.

16