Filed 8/31/20  P. v. Hudson CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>THEODORE SMITH HUDSON III,<br><br>        Defendant and Appellant. | A155873<br><br><br>(Sonoma County<br>Super. Ct. No. SCR-696335-1) |

Defendant Theodore Smith Hudson III appeals from a judgment after a jury found him guilty of multiple counts of theft from an elder.  He contends that the trial court:  (1) abused its discretion in excluding proposed impeachment evidence; (2) improperly imposed fines, fees, and restitution without determining his ability to pay them; and (3) failed to stay punishment under Penal Code section 654.[1]

On counts 3 through 6, defendant was convicted of theft of properties transferred by grant deed from the victim, Jane Doe, to defendant.  On count 3, defendant was sentenced to prison for a total of nine years (four years plus consecutive five-year term for enhancement).  On counts 4, 5, and 6, defendant received concurrent four-year sentences.  We conclude

---

[1] Unless otherwise indicated, all further section references will be to the Penal Code.

that these concurrent sentences constitute multiple punishment proscribed by section 654. Accordingly, we modify the sentences on counts 4, 5, and 6 as set forth below and affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

The following is a brief summary of some of the trial evidence, which we set out to provide context to the claims raised on appeal.

Starting in 2009, defendant was hired by an elderly couple, Jane Doe and Nick S., for intermittent work related to their personal residence and commercial properties. Jane and Nick then began paying defendant a monthly salary. Over the next several years, defendant's role and responsibilities expanded. For example, defendant assisted Nick with the management of the commercial properties and drove the couple to medical appointments.

Defendant attended to Nick as his health deteriorated around 2014. According to Jane, defendant began threatening to quit and demanding money and property from the couple. According to defendant, his conduct was triggered by Jane's refusal to get a caregiver for Nick and her interference with defendant's personal life. Jane testified she wrote in her journal on January 21, 2015, that defendant " 'settled for $50,000' " and one of the couple's properties, in Cloverdale, California. She testified that defendant made out a check to himself for $49,979.25 and brought it to her to sign.

Nick died in February 2015. The next month, Jane signed a trust providing that if defendant continued to care for Jane during her life, the Cloverdale property would go to defendant. According to Jane, defendant was unhappy with the trust because he would only get the property after her death and he would have to prove he had taken good care of her. According

2

to defendant, he felt that it was unfair that someone else could decide if he got the property or not and that Jane could be put in a home, which would prevent him from receiving the property. Jane testified that she revoked her trust in September 2015 in response to defendant's complaints.

Jane testified that she began adding defendant to her various bank accounts, upon defendant's assurances that he would never take any money out. She testified that defendant also started asking her repeatedly to sign over all of her commercial properties to him. In March 2016, defendant and Jane signed the grant deeds transferring ownership of 10 properties, including five properties in Sonoma County.

In May 2016, Jane signed a new will that left her entire estate to defendant. Jane testified that she signed the will because she was being "put against the wall" and "blackmailed" to leave everything to defendant.

In June 2016, defendant purchased a house. Defendant authorized wire transfers from Jane's bank accounts for the purchase. According to Jane, she was "shocked" because defendant had previously promised that he would not touch the money in her accounts. According to defendant, Jane wanted him to use the money in those accounts to purchase the house.

The information charged defendant with 11 felony counts of theft from an elder under section 368, subdivision (d) related to the $49,979.25 check (count 1), the Cloverdale property (count 2), the other four Sonoma County properties transferred by grant deeds (counts 3–6), and the wire transfers (counts 7–11). The information specially alleged that the offenses set forth in each count "are related felonies, a material element of which is fraud or embezzlement, which involve a pattern of related felony conduct, and the pattern of related felony conduct involves the taking of more than Five

3

Hundred Thousand Dollars ($500,000)" under section 186.11, subdivision (a)(2).

The jury found defendant guilty on counts 3 through 11 and found each associated special allegation true. The trial court declared a mistrial on counts 1 and 2 after the jury could not reach a verdict on those two counts. The trial court sentenced defendant to a total of 10 years in prison: four years (count 3) plus five years (consecutive term for count 3 enhancement), plus one year (consecutive term for count 7). Concurrent four-year sentences were imposed on counts 4 through 6, as well as counts 8 through 11.[2] This appeal followed.

## DISCUSSION

Defendant makes three arguments on appeal. First, he argues that the trial court abused its discretion in excluding proposed impeachment evidence. Second, defendant argues that remand is required because the trial court improperly imposed fines, fees, and restitution without determining his ability to pay them. Third, he argues that the trial court failed to stay the sentences on counts 4, 5, and 6 in violation of section 654. We address each argument in turn.

### I. EXCLUSION OF PROPOSED IMPEACHMENT EVIDENCE

Defendant argues that the trial court abused its discretion in excluding proposed impeachment evidence allegedly showing that Jane and Nick had committed tax fraud. We conclude that the trial court did not abuse its discretion.

---

[2] Defendant does not challenge the sentences for count 3, the count 3 enhancement, or counts 7 through 11 through this appeal.

4

## A.    Additional Facts

At trial, defendant sought to introduce tax returns submitted by Jane and Nick allegedly showing tax fraud in order to impeach Jane's credibility. The prosecutor stated that defendant's counsel gave her the documents after the trial started. The trial court excluded the documents, finding that the prosecutor was "never given notice that there was any question concerning the validity" of the tax returns and, thus, the documents should not be allowed in. The trial court also found that the validity of the tax returns was "basically tangential and collateral and borderline irrelevant." The trial court explained that defendant could testify regarding his participation in the preparation of tax documents and that evidence had already come in through testimony by prosecution witness Richard Torkelson, an accountant who testified regarding "some of the discounting of the properties for tax purposes." In the trial, defendant testified that he engaged in tax fraud in writing out the $49,979.25 check to himself but that "Miss Doe made [him] do it."

On appeal, defendant argues that the trial court abused its discretion in excluding the tax returns on both stated grounds: defendant's untimely disclosure of the returns and their lack of relevance. Neither argument is persuasive.

As to the issue of timeliness, section 1054.3, subdivision (a)(2) provides that a defendant and his or her attorney shall disclose to the prosecuting attorney "[a]ny real evidence which the defendant intends to offer in evidence at the trial." Section 1054.7, paragraph 1 requires that such disclosures be made "at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred."

5

Defendant offers no argument that the good cause exception applies and admits, "The record arguably shows that [the] disclosure was not timely." Instead, he argues that the prosecutor forfeited her objection by "not raising the purported late discovery issue when it arose" and the trial court's strict application of the timely disclosure rule " 'offended' " defendant's fundamental due process right to a fair trial. We disagree. The trial court exercised its discretion to exclude the tax returns upon the prosecutor's objection in the trial, and such "proper exercise of a trial court's discretion under section 1054.7 does not violate a criminal defendant's confrontation or due process rights." (*People v. Thompson* (2016) 1 Cal.5th 1043, 1105.)

As to the issue of relevance, the trial court has broad discretion under Evidence Code section 352 to determine whether impeachment evidence is subject to exclusion. (*People v. Clark* (2011) 52 Cal.4th 856, 931–932.) We review such an exclusion of evidence under an abuse of discretion standard. (*People v. Holloway* (2004) 33 Cal.4th 96, 134.) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125, quoting *People v. Jordan* (1986) 42 Cal.3d 308, 316.) We agree with the trial court that the proffered tax returns were "basically tangential and collateral and borderline irrelevant." The defense did not establish that Jane had any participation in the preparation of the tax returns, let alone knowledge of their contents.

Even assuming that the exclusion of the tax returns was erroneous, we reject defendant's argument that such error was so prejudicial as to violate his constitutional rights or otherwise render his trial fundamentally unfair.

6

As the California Supreme Court explained, as long as the excluded evidence "would not 'have produced "a significantly different impression of [the witness's] credibility" ' " the confrontation clause and related constitutional guarantees do not limit the trial court's discretion in this regard. (*People v. Harris* (2008) 43 Cal.4th 1269, 1292, quoting *People v. Frye* (1998) 18 Cal.4th 894, 946.) Here, we conclude that the tax returns would not have created a significantly different impression of Jane's credibility. This is particularly true because the trial court permitted defendant to testify that he engaged in tax fraud at Jane's instruction and evidence had already come in through testimony by Torkelson regarding discounting of the properties for tax purposes.

In sum, we conclude that the trial court did not abuse its discretion in excluding the tax return documents as proposed impeachment evidence.

## II.     IMPOSITION OF FINES, FEES, AND RESTITUTION

Defendant argues that remand is required because the trial court failed to determine defendant's ability to pay before imposing fines, fees, and restitution. Defendant relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We conclude that defendant forfeited the argument.

### A.     Additional Facts

At the October 5, 2018 sentencing hearing, the trial court ordered defendant to pay a $10,000 restitution fine (Pen. Code, § 1202.4, subd. (b)); a $10,000 parole revocation restitution fine (*id.*, § 1202.45), suspended unless parole is revoked; a $360 court security fee (*id.*, § 1465.8); and a $270 criminal conviction fee (Gov. Code, § 70373). On October 18, 2018, the court ordered defendant to pay $883,992.30 in direct restitution to Jane's estate.

7

## B.    Analysis

Defendant concedes that his trial counsel did not object to the imposition of fines, fees, and restitution, let alone raise any objection based on defendant's ability to pay. A timely objection below, however, was required to preserve this claim. (See *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153 (*Frandsen*) [concluding that the defendant forfeited challenge where his trial counsel failed to object to assessments or restitution fine at sentencing]; *People v. Trujillo* (2015) 60 Cal.4th 850, 859 [explaining that constitutional nature of the defendant's claim regarding his ability to pay did not justify a deviation from the forfeiture rule].)

Defendant fails to show an applicable exception to the doctrine of forfeiture. We disagree with defendant's argument that *Dueñas* was an unforeseen change in the law. As explained in *Frandsen*, "*Dueñas* was foreseeable. Dueñas herself foresaw it. The *Dueñas* opinion applied 'the *Griffin–Antazo–Bearden* analysis,' " flowing from cases *Griffin v. Illinois* (1956) 351 U.S. 12, *In re Antazo* (1970) 3 Cal.3d 100, and *Bearden v. Georgia* (1983) 461 U.S. 660. (*Frandsen*, *supra*, 33 Cal.App.5th at p. 1154, quoting *Dueñas*, *supra*, 30 Cal.App.5th at p. 1168.) *Dueñas* likewise observed: " 'The principle that a punitive award must be considered in light of the defendant's financial condition is ancient.' " (*Dueñas*, at p. 1171.) Accordingly, "*Dueñas* applied law that was old, not new." (*Frandsen*, at p. 1155.)

We also disagree with defendant's argument that his trial counsel's failure to object was ineffective assistance of counsel. The test for ineffective assistance of counsel requires a criminal defendant to establish both that his or her counsel's performance was deficient and that he or she suffered prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) "Judicial

8

scrutiny of counsel's performance must be highly deferential." (*Id*. at p. 689.) Defendant offers no evidence to satisfy either prong of the test.

Even assuming there was no forfeiture, we would reject defendant's claim. As to the $10,000 restitution fine, $360 court security fee, and $270 criminal conviction fee, courts have strongly criticized the substantive holding in *Dueñas*. (See, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 326–329, review granted Nov. 26, 2019, S258946.) We need not offer our own opinion because even if the holding in *Dueñas* was correct, we would conclude, on this record, that the error was harmless beyond a reasonable doubt. (*People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140.) A defendant's ability to pay is not limited to his or her present financial situation but can also be based on his or her future ability to earn prison wages and money after release from custody. (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837.) Here, the record shows defendant was 54 years old at the time of sentencing, had worked as a mason for 25 years, and had performed home repair and landscaping work for Jane and Nick for many years. Defendant will be serving time in prison and has the capacity to earn both during that time and after his release.

As to the $883,992.30 in direct restitution to Jane's estate, it is fundamentally different from the fines and fees. As *Dueñas* explains, California law provides for two types of restitution: (1) direct restitution to the victim, which is based on the victim's loss and is paid to the victim to compensate him or her for such loss; and (2) a restitution fine, which is set by the court and paid into a statewide victim compensation fund. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1169.) Moreover, section 1202.4, subdivision (g) expressly prohibits the consideration of a defendant's ability to pay in determining the amount of a restitution order to the victim. Defendant cites

no cases that extend the holding in *Dueñas* to direct victim restitution, and we decline to do so here.

In sum, we reject defendant's *Dueñas* claim.

## III. MULTIPLE PUNISHMENT UNDER SECTION 654

Defendant argues that the trial court should have stayed punishment on counts 4, 5, and 6 pursuant to section 654. The People concede the merit of this argument. We agree.

### A. Additional Facts

Defendant was convicted of four felony counts (counts 3–6) of theft from an elder related to four Sonoma County properties transferred by grant deeds in March 2016. At the sentencing hearing, the prosecutor stated, "We think 654 applies to counts 3 through 6," and counts "4, 5, and 6 should be stayed." On count 3, the trial court sentenced defendant to nine years in prison: four years plus a consecutive five-year term for the enhancement. On counts 4 through 6, instead of staying the sentences as the prosecutor recommended, the trial court imposed concurrent four-year sentences.

### B. Analysis

Section 654, subdivision (a) provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." In other words, section 654 proscribes multiple punishment for crimes arising from a single act. (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) This statutory protection has also been extended to proscribe punishment for multiple crimes arising from an indivisible course of conduct. (*Ibid.*) Here, defendant argues that the transfer of the four properties arose from an indivisible course of conduct.

10

To determine whether a course of conduct is indivisible, we look at the "defendant's intent and objective, not the temporal proximity of his offenses . . . ." (*Harrison, supra*, 48 Cal.3d at p. 335.) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*Ibid.*) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Ibid.*, quoting *People v. Beamon* (1973) 8 Cal.3d 625, 639.) Where the relevant facts are conceded or undisputed, this is a question of law that we review de novo. (*Harrison*, at p. 335.)

Here, the People concede that defendant "stole all of the commercial properties in question at the same time, as part of a common plan or scheme to deprive [Jane] of all of her property." Jane testified that prior to the transfer, defendant asked her repeatedly to sign over all of her commercial properties to him. When asked what she expected would happen once the grant deeds were signed, Jane testified that defendant explained to her "over and over again how he would, if he had the property, how he would run it, how he would continue to run it, and how it would all work out perfect." Defendant's indivisible course of conduct is supported by the jury verdict, finding that the offenses "are related felonies" and "involve a pattern of related felony conduct . . . ." Based on the undisputed evidence, we conclude that section 654 proscribes multiple punishment for counts 3 through 6.

The trial court's imposition of concurrent sentences for counts 4, 5, and 6 does not avoid this issue because a defendant is deemed to be

11

subjected to the term of all concurrent sentences, even though they are served simultaneously. (*People v. Jones* (2012) 54 Cal.4th 350, 353.) "Instead, the accepted 'procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable.' " (*Ibid.*, quoting *People v. Miller* (1977) 18 Cal.3d 873, 886.)

While defendant requests remand for resentencing to correct this section 654 error, the People ask this court to stay the sentences. An appellate court has the discretion to modify a judgment to stay sentences that should have been stayed. (See § 1260 [appellate court may reverse, affirm, or modify a judgment, or may remand for further proceedings "as may be just under the circumstances"].) In *People v. Alford* (2010) 180 Cal.App.4th 1463, 1473, the appellate court exercised its discretion to modify a judgment where a new sentencing hearing would not have changed the defendant's actual prison time, and thus the "futility and expense" of remand "militate[d] against it." The same reasoning applies here: A new sentencing hearing to stay the concurrent sentences for counts 4, 5, and 6 would consume judicial resources without changing defendant's prison time. Accordingly, we will exercise our discretion to modify the judgment to reflect that defendant's concurrent sentences for counts 4, 5, and 6 are stayed.

### DISPOSITION

The concurrent sentences on counts 4, 5, and 6 are stayed. The trial court is directed to forward to the Department of Corrections and Rehabilitation a new abstract of judgment that reflects the above modification. As modified, the judgment is affirmed.

12

_____

Jackson, J.


WE CONCUR:


_____

Siggins, P. J.


_____

Petrou, J.


A155873/*People v. Theodore Smith Hudson III*

13