Filed 8/31/23  In re S.L.S. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.L.S., a Person Coming Under the Juvenile Court Law. | H050182 (Santa Clara County Super. Ct. No. 20JV44202E) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> S.L.S., <br><br> Defendant and Appellant. | |

After a contested jurisdictional hearing, the juvenile court sustained allegations in the delinquency petition that the minor S.L.S. committed acts that would constitute second degree robbery and grand theft if committed by an adult.  At the disposition hearing, the court ordered that S.L.S. continue as a ward of the court and committed him to the Enhanced Ranch Program with various conditions of probation.

S.L.S. raises three claims on appeal.  First, he contends the evidence was insufficient to sustain the robbery allegation.  He argues that because the wardship petition identified a business as the victim of the robbery, the prosecution could not prove the victim experienced the required element of fear.  For the reasons below, we conclude this claim is without merit.

Second, S.L.S. contends the grand theft finding must be set aside because grand theft is a lesser included offense of second degree robbery.  Third, S.L.S. contends a condition authorizing the probation officer to place him out of his home to "meet family

crises" is unconstitutionally vague. The Attorney General concedes these latter two claims, and we accept the concessions.

Accordingly, we will reverse the order sustaining the grand theft allegation and remand the matter to the juvenile court to modify or delete the challenged probation condition. We will affirm the judgment in all other aspects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

The wardship petition alleged S.L.S. committed acts that, if committed by an adult, would constitute four offenses:  count 1—second degree robbery (Pen. Code, § 211)[1]; count 2—grand theft (§ 487, subd. (a)); count 3—buying or receiving stolen property (§ 496, subd. (a)); and count 4—resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1)).

After a contested jurisdictional hearing, the juvenile court sustained the violations alleged in counts 1 and 2.  The court dismissed count 3 as "duplicative" and granted the prosecution's motion to dismiss count 4.

At the dispositional hearing, the court continued S.L.S. as a ward of the court and committed him to the Santa Clara County Enhanced Ranch Program for six to eight months.  Among other probation conditions, the juvenile court authorized the assigned probation officer to "to place [S.L.S.] out of home from time to time to meet family crises."

S.L.S. timely appealed.

### B. Facts of the Offenses

In March 2022, Andrew Krebs and Thomas Borello were working as employees at Mike's Cameras.  S.L.S. and another male entered the store wearing hoodies and surgical masks.  When Krebs went to the back of the store, S.L.S.'s accomplice went behind the

---

[1] Subsequent undesignated statutory references are to the Penal Code.

2

counter and directed S.L.S. to "[m]ake a move" and go over the counter to steal the cameras. In response, S.L.S. moved across the counter and began to place cameras into his bag. Borello testified that "at that point, we knew we were being robbed." When Krebs returned to the front of the store, he felt "very stressed" because he was "seeing somebody taking cameras from the display" and instructed the two individuals to "stop."

When S.L.S.'s accomplice brandished a gun, Krebs backed away and called 911 from the rear of the store. Borello also saw the weapon and testified that he "did not have any feelings. I felt like I was watching a movie or something. I didn't feel fear. I was a bit concerned when he reached for his gun and his hand was shaking. I mean, I was thinking, 'Oh great. We have somebody who doesn't even know how to handle a weapon.' " Borello explained he did not move because "in a situation like that, the less you say and move around the better." After taking the cameras, S.L.S. and his accomplice led police on a vehicle pursuit that ultimately resulted in a collision. After a brief foot pursuit, the police took S.L.S. and his accomplice into custody, and recovered camera equipment from the vehicle.

## II. DISCUSSION

### A. Sufficiency of the Evidence for Robbery

S.L.S. contends the evidence was insufficient to support a finding of robbery because the prosecution failed to show the victim—identified in the wardship petition as "Mike's Cameras"—felt fear. The Attorney General argues S.L.S. forfeited his claim because he failed to object to any variance between the petition and the proof at the trial court. The Attorney General further argues the claim fails on the merits because the evidence was sufficient to support a finding that the employees were agents of Mike's Cameras and therefore "putative victims of the robbery."

#### 1. Legal Principles

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of

force or fear." (§ 211.) "The fear mentioned in Section 211 may be either: 1. The fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or, 2. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery." (§ 212.) "It is not necessary that there be direct proof of fear; fear may be inferred from the circumstances. . . ." (*People v. Morehead* (2011) 191 Cal.App.4th 765, 775.) Likewise, fear may be inferred despite contradictory testimony from the robbery victim. (*Ibid.*)

The rules of pleading in criminal cases are set forth in part 2, title 5, chapter 2 of the Penal Code. (§ 948 et seq.) Section 952 provides in part, "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified." (§ 952.) Such statement "may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense" and the statement may be made in "ordinary and concise language without any technical averments or any allegations of matter not essential to be proved." (*Ibid.*) "When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, *an erroneous allegation as to the person injured*, or intended to be injured, or of the place where the offense was committed, or of the property involved in its commission, is not material." (§ 956, italics added.) "No accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." (§ 960.)

A "defendant has forfeited [their] right to object to an alleged variance between the pleading and the proof by failing to raise the objection in the trial court." (*People v. Maury* (2003) 30 Cal. 4th 342, 427 (*Maury*).) Further, "[a] defendant may not be

4

permitted to submit to a trial on the merits without objection, taking his chances of obtaining a favorable verdict, and reserve, in the event of an adverse judgment, any objection which he may have to mere irregularities in the form of indictment or pleading, for an attack in the appellate court for the first time.  [Citations.]"  (*People v. Meraviglia* (1925) 73 Cal.App. 402, 407 (*Meraviglia*).)

In reviewing a challenge to the sufficiency of the evidence in the sustaining of an allegation in a juvenile case, "we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]"  (*People v. Gonzales* (2011) 51 Cal.4th 894, 941.)  However, we cannot "venture beyond the evidence presented at trial, and may consider only those inferences that are reasonably supported by the record."  (*People v. Ware* (2022) 14 Cal.5th 151, 167.)  Reasonable inferences "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work."  (*People v. Morris* (1988) 46 Cal.3d 1, 21, disapproved on another ground in *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict.  [Citations.]"  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

### 2. *Forfeiture*

S.L.S. argues that by identifying the purported victim as "Mike's Cameras" instead of Krebs or Borello the prosecution made a "charging decision" and "placed upon themselves the burden of proving beyond a reasonable doubt that Mike's Cameras felt fear."  The Attorney General contends this argument constitutes a claim of variance between pleading and proof and that S.L.S. forfeited the claim by failing to object below. We agree with the Attorney General on both points.

5

In *People v. Collins* (1960) 54 Cal.2d 57, the defendants were charged with forcible rape under former section 261, subdivision 3. (*Id.* at p. 60.) In a bench trial, the court found them guilty of statutory rape under subdivision 1. On appeal, the defendants claimed they were improperly convicted of statutory rape despite sufficient evidence of that offense because they were charged instead with forcible rape. (*Id.* at p. 58.) The court held that when the information charges the accused with one crime, but the proof supports a charge of an offense in another subdivision of that crime, it constitutes a "variance" between pleading and proof. (*Id.* at p. 59.) To challenge a variance on appeal, a defendant must object below to "irregularities in the form of indictment or pleading" or the claim is forfeited. (*Meraviglia*, *supra*, 73 Cal.App. at p. 407; *Maury*, *supra*, 30 Cal.4th at p. 427.)

S.L.S. nonetheless characterizes the claim as insufficiency of evidence. He contends the prosecution failed to prove that the named victim, Mike's Cameras, felt fear since the store is inanimate. This implies the prosecution should have identified Krebs or Borello as the "actual" victims of the robbery. S.L.S. does not dispute that had Krebs or Borello been identified as victims in the petition, the evidence would have been sufficient to show they felt fear. The thrust of the argument is that the petition simply misidentified the victim. Because S.L.S. failed to object to this variance below, he has forfeited the claim. (*Maury*, *supra*, 30 Cal.4th at p. 427.)

### 3. *S.L.S. Fails to Show He Was Prejudiced by the Variance*

But for the reasons below, even if we did not find it forfeited, the claim fails on the merits. The Attorney General contends designating the wrong victim is immaterial here. We agree. "A variance is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense, or is likely to place him in second jeopardy for the same offense." (*People v. Williams* (1945) 27 Cal. 2d 220, 226.) In *People v. Olf* (1961) 195 Cal.App.2d 97, the court applied section 956 in holding that the erroneous designation of a victim or the omission of the name of the victim from a

6

charging document is immaterial.  Likewise, in *People v. Foster* (1926) 198 Cal. 112, the court held that "[t]he person injured is not material if the crime is described in the information with sufficient certainty as to identify the act." (*Id.* at p. 122.)

This rule applies equally in juvenile court proceedings.  In *In re Michael D.* (2002) 100 Cal.App.4th 115, the juvenile claimed that the evidence presented by the prosecution was insufficient to prove an allegation of the petition, which alleged the juvenile pointed a replica firearm at a specific person. (*Id.* at p. 128.)  The Court of Appeal held that "the variance between the petition and the evidence is inconsequential" because "the minor, in effect, concedes he had adequate notice of the charges against him." (*Ibid.*)  Further, "[t]he charging document provides notice to the accused.  As long as it serves that purpose, it is adequate." (*Id.* at p. 127.)

Here, S.L.S. contends that he "relied on the People's charging decision in the petition to provide adequate notice."  But S.L.S. provides no evidence or citation to the record showing he relied on the specific identification of the victim to his detriment.  The record shows S.L.S. had the opportunity to, and did, cross-examine both store employees as if they were victims.  At no point before or during trial did S.L.S. contend that the identification of Mike's Cameras as the victim harmed his defense.  We conclude that the identification of Mike's Cameras as the victim in the wardship petition provided sufficient notice of the offenses charged and that S.L.S. was not misled in preparing his defense.

S.L.S.'s reliance on *People v. Miller* (1977) 18 Cal.3d 873 (*Miller*) (overruled on another ground by *People v. King* (1993) 5 Cal.4th 59) is misplaced.  In *Miller*, the defendant and an accomplice robbed a jewelry store. (*Id.* at p. 878.)  In the course of the robbery, while a salesperson, John Keating, displayed watches to Miller's accomplice, Miller shot the security guard, Charles Burk. (*Ibid.*)  The information alleged Miller by means of force or fear took personal property "from the person, possession and immediate presence of Jon [*sic*] Keating, and in the course of the robbery, with the intent

7

to inflict great bodily injury upon Charles Burk, did inflict great bodily injury upon Charles Burk." (*Id.* at p. 879.) Miller challenged the augmented punishment imposed under former section 213 because "there is no evidence or finding that he intentionally inflicted great bodily injury on the victim of the robbery." (*Id.* at p. 878.) Miller argued that the victim named in the information—John Keating—suffered no bodily injury, and that the bodily harm suffered by Charles Burk, who was not named as the robbery victim, could not be substituted in lieu of any injury to Keating. (*Id.* at p. 880.)

The Supreme Court agreed with Miller on this point, noting that former "[s]ection 213 provides in pertinent part that if a defendant 'inflicted great bodily injury on the *victim* of the robbery, *such fact shall be charged in the indictment or information* and if found to be true' the defendant shall suffer the augmented penalty." (*Miller, supra,* 18 Cal.3d at p. 881.) Thus a "necessary element is great bodily injury to a victim of a robbery. It is not enough that Burk falls within that class of persons who may have been alleged to be a victim; the trier of fact must have found him to be a victim on pleadings and instructions that properly frame the issue." (*Id.* at p. 882.) The information did not identify Burk as a victim of the robbery, and even though Burk could have been designated as a victim, he also could have been a "complete stranger who was unintentionally and accidentally injured" during the course of the robbery. (*Id.* at p. 881.) "As the information charged only injury to Burk without alleging his status, we cannot conclude that the jury found him to be a victim of the robbery. . . . Accordingly, the finding of great bodily injury to Burk cannot sustain the imposition of the increased punishment for robbery." (*Id.* at p. 882.)

The logic of *Miller* does not support S.L.S.'s claim. First, the text of former section 213 created an increased punishment for great bodily injury inflicted on "*the* victim of the robbery," not "any" victim of the robbery. (*Miller*, *supra*, 18 Cal.3d at p. 880, fn. 3, italics added.) The text thereby assumed a single robbery victim, and the defendant had to inflict great bodily injury on that same victim to trigger the increased

punishment.  Furthermore, the text expressly required that this condition be pleaded in the charging document.  Thus, regardless of the victim's identity as alleged in the charging document, the charging document had to plead—and a jury had to find—that the injured person was the victim of the robbery for the increased punishment to apply. (*Id.* at p. 882.)  But because the information in *Miller* only named Keating as the victim of the robbery, the jury never found Burk was a victim of the robbery; the jury found only that Keating was a victim, and Keating had suffered no injuries.  Therefore, the increased punishment could not be applied based on injuries suffered solely by Burk.  In short, the Supreme Court struck the finding of great bodily injury not simply because the pleading identified Keating instead of Burk as the victim of the robbery, but because the jury never found that Burk was also a victim of the robbery.

Unlike former section 213, here the text of section 211 contains no language requiring a finding that injuries were suffered by the same person who was found to be the victim of the robbery.  Nor does section 211 set forth any specific pleading requirements.  As set forth above, the wardship petition in this case is governed by the generally applicable rules of pleading set forth in sections 948 et. seq.  Under those rules, the petition was not required to name a specific victim of the robbery, and nothing in section 211 required the petition to allege any other conditions applied to the same victim.  *Miller* is therefore inapposite.

For the reasons above, we conclude this claim is without merit.

### B. Grand Theft is a Lesser Included Offense of Robbery

S.L.S. argues that the trial court could not have found him to have committed both robbery and grand theft because theft is a lesser included offense of robbery.  The Attorney General concedes, and we find the concession well-taken.

We review de novo the claim that theft is a lesser included offense of robbery because the question is a matter of law.  (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1474.)

"There are two tests to determine if an offense is a lesser included offense of another: '(1) the greater statutory offense cannot be committed without committing the lesser because all of the elements of the lesser offense are included in the elements of the greater; or (2) . . . the charging allegations of the accusatory pleading include language describing it in such a way that if committed in that manner the lesser offense must necessarily be committed. [Citations.]' " (*People v. Moses* (1996) 43 Cal.App.4th 462, 466.) Here we apply the former test.

All elements of theft are included in robbery, except that robbery requires the victim to be subject to force or fear. (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1256.) Since robbery is an aggravated manner of theft and includes the elements of theft, "it is well settled that theft is a necessarily included offense of robbery," whether the theft is charged as grand theft or petty theft. (*People v. Ortega* (1998) 19 Cal.4th 686, 694-697, overruled on another ground in *People v. Reed* (2006) 38 Cal.4th 1224.) Therefore, when a defendant is found culpable for both theft and robbery, the theft conviction may be reversed if both convictions were predicated on the same conduct. (*Ibid.*)

Here, count 1 alleged that the robbery was based on the taking of the "personal property" of Mike's Cameras and count 2 stated that the grand theft allegation was based on the taking of "cameras and associated equipment." The evidence supporting both allegations involved the same property taken during the same course of conduct. Accordingly, grand theft is a lesser included offense of robbery, and the sustained allegation must be reversed.

### C. The Probation Condition Authorizing the Probation Officer to Place S.L.S. Out of the Home to "Meet Family Crises" Is Unconstitutionally Vague

S.L.S. argues that the probation condition which authorizes the probation officer to remove him from his home to "meet family crises" is unconstitutionally vague. The Attorney General concedes that the condition lacks specificity. We accept the concession.

We generally review the court's imposition of a probation condition for an abuse of discretion. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.) However, we apply the de novo standard of review for constitutional challenges to probation conditions. (*Id.* at p. 1143.) We may review a challenge to the constitutionality of a probation condition absent any objection below if the issue may be resolved as a matter of law without reference to the sentencing record. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888-889 (*Sheena K.*).)

A trial court is given broad discretion in setting forth probation conditions by balancing the interests of both the defendant and public welfare. (*People v. Hall* (2017) 2 Cal.5th 494, 502 (*Hall*).) "However, a probation condition may not be enforced if it 'forbids or requires the doing of an act in terms so vague' that people of 'common intelligence must necessarily guess at its meaning and differ as to its application.' " (*Ibid.*; accord, *Sheena K.*, *supra*, 40 Cal.4th at p. 890.) To withstand a "void-for-vagueness" challenge, "a probation condition must be sufficiently definite to inform the probationer what conduct is required or prohibited, and to enable the court to determine whether the probationer has violated the condition." (*Hall*, *supra*, at p. 500.)

The record shows S.L.S. had been subject to detrimental conditions at home, including lack of supervision and physical and emotional abuse. The juvenile court authorized the probation officer to remove S.L.S. from his home for up to 30 days to "meet family crises." However, the juvenile court did not define what would constitute a "family crisis" sufficient to warrant removing S.L.S. from the home. As S.L.S. notes, "crisis" is subject to numerous interpretations.

After a careful review of the record, we are left to speculate what the juvenile court meant by this probation condition. We agree with the parties that the probation condition is not "sufficiently definite" and could not properly inform S.L.S. what conditions are required or prohibited. Nor could a court determine with a sufficient degree of certainty whether the probation condition was violated. Accordingly, we will

remand to the juvenile court to clarify the term "meet family crises" and to identify the conditions that would permit the probation officer to remove S.L.S. from his home.

## III. DISPOSITION

The May 18, 2022 order sustaining the grand theft allegation is reversed. The matter is remanded to the juvenile court to modify or delete probation condition Number 13 consistent with this opinion.

_____

Greenwood, P. J.

WE CONCUR:

_____

Grover, J.

_____

Lie, J.

H050182
People v. S.L.S.